**Francisca Sophia IPINA, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

No. 88–1582.

United States Court of Appeals,
First Circuit.

Heard Dec. 7, 1988.

Decided Feb. 28, 1989.

Fred Hewitt Smith, for petitioner.

Jill E. Zengler, Office of Immigration Litigation, Civ. Div., Dept. of Justice, Indianapolis, Ind., with whom John R. Bolton, Asst. Atty. Gen., Civ. Div., and Robert Kendall, Jr., Asst. Director, Washington, D.C., were on brief for respondent.

Before CAMPBELL, Chief Judge, BREYER and TORRUELLA, Circuit Judges.

TORRUELLA, Circuit Judge.

Francisca Sophia Ipina appeals from a Board of Immigration Appeals' decision that affirmed an immigration judge's order finding her deportable and denying her applications for asylum and withholding of deportation. Ipina is a 34–year old citizen of El Salvador who last entered the United States without inspection by an immigration officer on January 12, 1979. Since that time, she has been convicted in 1983 for possession of cocaine, in 1984 for possession with intent to distribute cocaine, and in 1984 for possession with intent to distribute heroin. On each occasion, she received a suspended sentence.

On February 10, 1984, Ipina was served with an Order to Show Cause alleging her deportability based on her illegal entry, pursuant to section 241(a)(2) of the Immigration and Naturalization Act, 8 U.S.C. § 1251(a)(2), and based on her 1983 conviction, pursuant to section 241(a)(11) of the same Act, 8 U.S.C. § 1251(a)(11). On April 30, 1984, Ipina conceded the facts and allegations contained in the Order to Show Cause, but filed an application for withholding of deportation asserting a fear of persecution if she was returned to El Salvador, and an application for asylum for the same reason, pursuant to sections 243(h)[1] and 208(a)[2] of the Immigration and Naturalization Act.

An immigration judge concluded that Ipina was deportable, and found her statutori-

---

1. Section 243(h) of the Immigration and Naturalization Act, 8 U.S.C. § 1253(h) (1988), provides in pertinent part:

   (1) The Attorney General shall not deport or return any alien ... to a country if the Attorney General determines that such alien's life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.

   (2) Paragraph (1) shall not apply to any alien if the Attorney General determines that—

   .   .   .   .   .

   (B) the alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States[.]

2. Section 208(a) of the Immigration and Naturalization Act, 8 U.S.C. § 1158(a) (1988) states:
   The Attorney General shall establish a procedure for an alien physically present in the

United States or at a land or port of entry, irrespective of such alien's status, to apply for asylum, and the alien may be granted asylum in the discretion of the Attorney General if the Attorney General determines that such alien is a refugee within the meaning of [section 101(a)(42)(A) of the Act].

Section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A), states in pertinent part:

   The term refugee means (A) any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion....

ly ineligible for both asylum[3] and withholding of deportation because of her drug-related convictions. He thus dismissed her petitions without reaching the merits of her persecution claim. The Board of Immigration Appeals affirmed that decision.[4] The BIA first held that Ipina was deportable. With respect to her petition for withholding of deportation, the BIA agreed with the immigration judge that Ipina was statutorily ineligible for this benefit because she had been convicted of a "particularly serious crime." With respect to Ipina's petition for asylum, the BIA rejected the immigration judge's conclusion that Ipina was statutorily ineligible for asylum. Instead of remanding for a determination of the merits, the BIA itself assessed Ipina's persecution claim because the appropriate facts were already in the record. It held that Ipina was not entitled to asylum for two independent reasons: Ipina had not established a well founded fear of persecution, but that even if she had, the INS, as a matter of discretion, could have denied her asylum application on account of her drug convictions. The BIA thus concluded that Ipina was statutorily eligible for asylum, but not entitled to it on the merits.

On appeal,[5] Ipina raises three issues. The first two relate to her petition for asylum. She claims that the BIA's holding that she had not established a well-founded fear of persecution was based on an incorrect legal standard and unsupported by substantial evidence. She also claims that the BIA incorrectly held that the INS could

deny her asylum petition as a matter of discretion on account of her drug-related convictions. With respect to her petition for withholding of deportation, she claims that her drug-related convictions do not automatically make her "a danger to the community" and therefore she should not have been statutorily ineligible for withholding of deportation.

■■■ We discuss the petition for asylum first. Decisions denying asylum under section 208(a) of the Act, 8 U.S.C. § 1158(a), are reviewed using a two-step standard of review. The threshold finding of whether the alien has established a well-founded fear of persecution qualifying him for refugee status under section 101(a)(42) of the Act, 8 U.S.C. § 1101(a)(42), and thus making him eligible for asylum, is reviewed under the substantial evidence test. *See Arteaga v. INS*, 836 F.2d 1227, 1228 (9th Cir.1988). The ultimate decision whether to grant the alien asylum is reviewed under the abuse of discretion standard. *See Vides–Vides v. INS*, 783 F.2d 1463, 1466 (9th Cir.1986).

■■ Ipina argues that the BIA's threshold finding that she had not established a well-founded fear of persecution is based on an incorrect legal standard—more likely than not—because it fails to mention *INS v. Cardoza–Fonseca*, 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987), the seminal case in which the Supreme Court interpreted the meaning of the phrase "well-founded fear of persecution" used in sec-

---

**3.** The immigration judge found Ipina ineligible for asylum based on 8 C.F.R. 208.8(f), which provides in pertinent part:

> *Denial*—(1) *General.* The district director shall deny a request for asylum or extension of asylum status if it is determined that the alien:

> . . . . .

> (iv) The alien, having been convicted by a final judgment of a particularly serious crime, constitutes a danger to the community of the United States[.]

**4.** Board Member Michael Heilman concurred only in the result, based on his conclusion that Ipina had failed to establish a well-founded fear of persecution or a clear probability of persecution under sections 208 and 243(h) of the Immigration and Naturalization Act, 8 U.S.C. §§ 1158 and 1253(h), respectively.

**5.** Section 106 of the Immigration and Naturalization Act, 8 U.S.C. § 1105a(a), grants us jurisdiction to review directly the BIA's final disposition of Ipina's petition for withholding of deportation and her related petition for asylum. *See Rodriguez–Rivera v. U.S. Dep't of Immigration and Naturalization*, 848 F.2d 998, 999 (9th Cir. 1988); *Carvajal–Muñoz v. INS*, 743 F.2d 562, 566–67 (7th Cir.1984); *see also Pérez–Alvarez v. INS*, 857 F.2d 23, 24 (1st Cir.1988) (directly reviewing BIA decision involving a petition for asylum); *Ananeh–Firempong v. INS*, 766 F.2d 621, 622 (1st Cir.1985) (directly reviewing BIA decision involving a petition for withholding of deportation).

tion 208(a). Ipina argues that the absence of a citation to that case implies that the BIA was unaware of its holding.

We find this argument unconvincing. *Cardoza–Fonseca* held only that the phrase "well-founded fear of prosecution" does not require an alien to prove that it is more likely than not that she will be persecuted if asylum is denied. *Id.* 107 S.Ct. at 1222. The Supreme Court did not attempt in that opinion to give any further substance to the phrase. *See id.* at 1222; *id.* at 1223 (Blackmun, J., concurring). Consequently, the absence of a citation to *Cardoza–Fonseca* does not necessarily reflect lack of awareness of its holding. The BIA opinion's citation to *Matter of Mogharrabi,* Interim Decision 3028 (BIA 1987) is conclusive evidence in favor of the government on this issue. *Mogharrabi* acknowledges and follows the holding of *Cardoza–Fonseca* and represents the "starting point" in an "ongoing effort to formulate a workable and useful definition of the [well-founded fear of persecution] standard." *Mogharrabi,* slip op. at 5. Under these circumstanc-

es, we hold that Ipina has not proved that the BIA was oblivious to *Cardoza–Fonseca* and used the incorrect more likely than not standard for purposes of determining whether she was eligible for asylum under section 208(a).[6]

■ Ipina also argues that there was insufficient evidence to support the BIA's finding.[7] She bears a difficult burden on this issue, because "[a]ll the substantial evidence standard requires is that the BIA's conclusion, based on the evidence presented, be substantially reasonable." *Diaz–Escobar v. INS,* 782 F.2d 1488, 1493 (9th Cir.1986). A reviewing court is not allowed to reverse the BIA simply because it disagrees with the BIA's evaluation of the facts. *See id.* We are forced to reject Ipina's claim because there is substantial evidence to support the BIA's conclusion that Ipina has not established a well-founded fear of persecution. Neither she nor any member of her family has taken a political stance in El Salvador and neither she nor any members of her family have ever been arrested in El Salvador.[8] She

---

**6.** *Mogharrabi* canvasses the different formulations of the well-founded fear standard developed by federal appellate courts and adopts the approach of the Fifth Circuit. "[A]n applicant for asylum has established a well-founded fear if he shows that a reasonable person in his circumstances would fear persecution." *Mogharrabi,* slip op. at 9; *see Guevara Flores v. INS,* 786 F.2d 1242, 1249 (5th Cir.1986), *cert. denied,* 480 U.S. 930, 107 S.Ct. 1565, 94 L.Ed.2d 757 (1987); *Carcamo–Flores v. INS,* 805 F.2d 60, 68 (2d Cir.1986) (also adopting the Fifth Circuit reasonable person standard). The reasonable person standard is a more qualitative approach than the "good reason" and "reasonable possibility" standards adopted by the Seventh and Ninth Circuits. *See Cardoza–Fonseca v. INS,* 767 F.2d 1448, 1453 (9th Cir.1985), *aff'd,* 480 U.S. 421, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Carvajal–Muñoz v. INS,* 743 F.2d 562, 574 (7th Cir.1984). The latter approaches try to describe verbally the percentage of likelihood required by the well-founded fear standard. The practical value of these "semantic niceties" is unclear. *Cardoza–Fonseca,* 107 S.Ct. at 1228 (Powell, J., dissenting). The qualitative approach may be a more realistic and flexible response to the heterogeneous situations facing asylum applicants. *See M.A. A26851062 v. U.S.I.N.S.,* 858 F.2d 210, 214 n. 2 (4th Cir.1988); *Diaz–Escobar v. INS,* 782 F.2d 1488, 1492 (9th Cir.1986). In any event, we see no reason to choose amongst these alternatives and decide the "final contours" of the

standard, *Cardoza–Fonseca,* 107 S.Ct. at 1223 (Blackmun, J., concurring), because that issue has neither been raised nor briefed by the parties.

**7.** Ipina does not challenge the BIA's authority to engage in a de novo review of her persecution claim. Even if she did, there is case law recognizing the BIA's authority to engage in de novo review. *See, e.g., De Lucia v. INS,* 370 F.2d 305, 308 (7th Cir.1966), *cert. denied,* 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1967).

**8.** Ipina claims that the facts in her case are virtually identical to the facts in *Cardoza–Fonseca,* and that her case is therefore controlled by that case. As the government points out, however, there are important differences between the two cases. Cardoza Fonseca's brother had been tortured and imprisoned for his political activities in Nicaragua. They had fled that country together; if she was forced to return, she would probably be interrogated and tortured to determine her brother's whereabouts. Even if the facts of the two cases were identical, however, the Supreme Court's opinion in *Cardoza–Fonseca* cannot control this case because the Supreme Court remanded for a determination whether Cardoza Fonseca had established a well-founded fear of persecution under the standard established by the Court. The three dissenting Justices that did address that issue

received an exit visa to leave El Salvador in 1979 and also obtained a passport from the El Salvador consulate in New York in 1984.[9] Her mother, three brothers, and two sisters continue to live in El Salvador. The two incidents cited by Ipina to support her claim—the displacement of her grandparents from their home by guerrillas and pressure faced by her brothers to serve in the military—simply do not suggest that Ipina would be singled out for persecution if she returned to El Salvador.

■ We therefore affirm the BIA's holding that Ipina did not establish a well-founded fear of persecution and its order affirming the denial of her application for asylum under section 208(a) of the Immigration and Naturalization Act. Since we affirm the BIA's disposition of the first issue, we do not need to decide the second issue, which represents an alternative ground for denying Ipina's application for asylum. We now turn to Ipina's application for withholding of deportation.

We also do not need to decide the third issue raised by Ipina because we find that even if Ipina was statutorily eligible for withholding of deportation, she is not entitled to that relief because she has not established a clear probability of persecution as required by section 243(h). *See INS v. Stevic,* 467 U.S. 407, 430, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984) (holding that the clear probability standard of section 243(h) requires a showing that it is more likely than not that an alien would be subject to persecution on one of the statutorily specified grounds). This conclusion follows a fortiori from our disposition of the second issue. *See Rodríguez–Rivera v. United States Department of Immigration and Naturalization,* 848 F.2d 998, 1007 (9th Cir.1988); *Carvajal–Muñoz v. INS,* 743 F.2d 562, 576, 579 (7th Cir.1984). The clear probability of persecution standard re-

quires an alien to meet a higher burden of proof than the well-founded fear of persecution standard. *See Cardoza–Fonseca,* 107 S.Ct. at 1213 ("One can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurence taking place."). Ipina's failure to establish a well-founded fear of persecution necessarily implies that she is unable to prove the clear probability of persecution required by section 243(h). Thus, regardless of whether she was statutorily eligible for the relief authorized in section 243(h), we hold that she is not entitled to it on the merits.

Accordingly, the decision of the Board of Immigration Appeals is *affirmed.*

---

would have affirmed the BIA's decision denying Cardoza Fonseca's asylum petition. *See Cardoza–Fonseca,* 107 S.Ct. at 1230–32 (Powell, J., dissenting, joined by Rehnquist, C.J., and White, J.).

**9.** We recognize that the ability to obtain a passport and exit visa may not always indicate absence of persecution. For example, a govern-

ment may be more than willing to provide those documents to a known troublemaker to get rid of her. *See García–Ramos v. INS,* 775 F.2d 1370, 1374 & n. 7 (9th Cir.1985). Ipina, however, has adduced no proof whatsoever to suggest that the El Salvador government regarded her as a troublemaker.