William Alexander
**ALVAREZ–FLORES, Petitioner,**

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

No. 89–1788.

United States Court of Appeals,
First Circuit.

Heard March 5, 1990.
Decided July 18, 1990.

Daniel Kanstroom, Cambridge, Mass., with whom Christina DeConcini, Somerville, Mass., was on brief, for petitioner.

Linda S. Wendtland, Office of Immigration Litigation, Civil Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., and Robert Kendall, Jr., Asst. Director, were on brief, for respondent.

Before CAMPBELL, Chief Judge, and BOWNES and CYR, Circuit Judges.

CYR, Circuit Judge.

Petitioner, William Alexander Alvarez–Flores, a native and citizen of El Salvador, petitions for review of the decision of the Board of Immigration Appeals (BIA) denying his request for asylum and for withholding of deportation. We have jurisdiction pursuant to 8 U.S.C. § 1105a(a) which provides the "sole and exclusive procedure" for the review of final orders of deportation. *See Ipina v. INS,* 868 F.2d 511, 513 n. 5 (1st Cir.1989). We deny the petition.

I

Petitioner Alvarez entered the United States on or about April 5, 1984, and was apprehended immediately by the Immigration and Naturalization Service (INS), which promptly instituted deportation proceedings. At the deportation hearings conducted in Boston in 1985, petitioner conceded deportability under 8 U.S.C. § 1251(a)(2) but petitioned for political asylum and withholding of deportation.

The petition was predicated on an alleged fear that, as a young male opposed to participating on either side of the civil war, petitioner would be recruited forcibly, and possibly killed, by either the government or the guerrillas if he were to be returned to El Salvador. On two occasions petitioner was detained for possible recruitment, once by the army and once by the guerrillas. Although released unharmed on each occasion, Alvarez expresses fear lest in the future he be forced to join one side or the other, or suffer for his refusal. Alvarez further alleges that, as campesino cheesemakers, he and his family were particularly vulnerable to guerrilla demands for food. Since refusal was dangerous, Alvarez on occasion provided the guerrillas with food. Petitioner asserts that he feared that the government would regard him as a guerrilla because he provided food. Finally, Alvarez asserts that during the one-year period before he fled to the United States he "practically never left the house."

The Immigration Judge denied petitioner's requests for asylum and deportation but allowed Alvarez thirty days for voluntary departure. Petitioner filed a timely appeal with the BIA. After briefing by the parties and a *de novo* review of the admin-

istrative record, the BIA affirmed the decision of the Immigration Judge and concluded that Alvarez had "failed to demonstrate that a reasonable person in his circumstances would fear persecution for one of the grounds specified in the Act."

## II

■ The present appeal concerns claims under both the asylum and deportation provisions of the Immigration and Nationality Act (Act). Petitioner bears the burden of proving eligibility for asylum and for withholding of deportation. 8 C.F.R. §§ 208.5, 242.17(c); *Youssefinia v. INS*, 784 F.2d 1254, 1260 (5th Cir.1986); *Diaz–Escobar v. INS*, 782 F.2d 1488, 1492 (9th Cir.1986).

Withholding of deportation is governed by section 243(h) of the Act, 8 U.S.C. § 1253(h), and must be granted if an "alien's life or freedom would be threatened [in the country of deportation] on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* While withholding of deportation is mandatory for anyone able to meet the statutory requirements, the applicant must show a clear probability of persecution. *INS v. Stevic*, 467 U.S. 407, 429–30, 104 S.Ct. 2489, 2501, 81 L.Ed.2d 321 (1984) ("clear probability" standard requires showing that it is "more likely than not" that applicant would suffer persecution).

Section 208(a) of the Act, 8 U.S.C. § 1158(a), gives the Attorney General discretion to grant asylum to an otherwise deportable alien who qualifies as a "refugee" within the meaning of section 101(a)(42)(A) of the Act, 8 U.S.C. § 1101(a)(42)(A). Section 101(a)(42)(A) defines "refugee" as anyone unable to return to the country of deportation "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.*

■ Thus, asylum involves a two-step process: the determination of statutory eligibility; and, the discretionary determination whether to grant asylum.

Asylum requires a showing that the applicant has a "well-founded fear of persecution." Although we have yet to define the "final contours" of the "well-founded fear" standard, *see Ipina*, 868 F.2d at 514 n. 6 (canvassing different formulations of "well-founded fear" standard without deciding "final contours"), the BIA requires that an applicant show that a "reasonable person in his circumstances would fear persecution," *Matter of Mogharrabi*, Interim Decision 3028 (BIA 1987).

■ We review findings of fact by the BIA under a deferential "substantial evidence" standard. *See Novoa Umania v. INS*, 896 F.2d 1, 2 (1st Cir.1990) (citing *Diaz–Escobar v. INS*, 782 F.2d at 1492–93). Moreover, given the BIA's "Congressional mandate and the legal requirement that we show its decisions of this sort considerable respect," we will not reverse simply because we disagree with the BIA's evaluation of the facts. *Id.* at 4; *Ipina*, 868 F.2d at 514.

■ Petitioner argues that the BIA has misstated and misapplied the law. Yet, even accepting petitioner's suggestion that "questions of law, such as whether the BIA applied the appropriate legal standard, [are reviewed] de novo," *Rodriguez–Rivera v. INS*, 848 F.2d 998, 1001 (9th Cir.1988) (citing *Arteaga v. INS*, 836 F.2d 1227, 1228 (9th Cir.1988)), we are cautioned that when Congress, implicitly or explicitly, leaves gaps in a statutory program, "the courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the ... program." *INS v. Cardoza–Fonseca*, 480 U.S. 421, 448, 107 S.Ct. 1207, 1222, 94 L.Ed.2d 434 (1987). *See Perlera–Escobar*, 894 F.2d 1292, 1296 (11th Cir.1990) (although "questions of statutory interpretation [are reviewed] de novo," the court is "obliged ... to defer to the BIA's interpretation of the applicable statute if that interpretation is reasonable") (citation omitted). Deference to the agency's interpretation is called for particularly when Congress incorporates into the statute terms of "some ambiguity ... like 'well-founded fear' which can only be given concrete meaning

through a process of case-by-case adjudication." *Cardoza–Fonseca,* 480 U.S. at 448, 107 S.Ct. at 2.

▇ Thus, whether or not review is termed *de novo,* we are required to "respect the Board's *legal* decision" as to whether the facts, as found, fall within the scope of the relevant statutory authority.[1] *Novoa–Umania* at 2 (emphasis added). *Cf. Cardoza–Fonseca,* 480 U.S. at 448, 107 S.Ct. at 1221 ("narrow legal question[s]," proper for the court to decide, are "quite different from the question of interpretation that arises in each case in which the agency is required to apply ... standards to a particular set of facts").

### III

Petitioner asserts three grounds entitling him to a withholding of deportation and to asylum.[2] We review only the denial of the asylum claim. Since the standard for withholding deportation is more stringent, a petitioner unable to satisfy the asylum standard fails, *a fortiori,* to satisfy the former. *See Ipina,* 868 F.2d at 515; *Diaz Escobar,* 782 F.2d at 1492.

### A

Petitioner first claims to deserve asylum because the government of El Salvador would attribute to him the political opinion that he supports the guerrillas since he has provided food in response to their demands. Although the petitioner asserts that he is in fact a neutral in the civil war, case law supports his contention that an imputed political opinion, whether correctly or incorrectly attributed, can constitute a ground of political persecution within the meaning of the Act. *See, e.g., Hernandez–Ortiz v. INS,* 777 F.2d 509, 516–17 (9th Cir.1985); *Ramirez Rivas v. INS,* 899 F.2d 864, 867 (9th Cir.1990).

▇ Petitioner asserts that the BIA applied an incorrect legal standard in rejecting his claim to asylum on the basis of an imputed political opinion. Petitioner's argument is premised on a single statement by the BIA that the record "does not suggest that the authorities were even aware of the respondent's actions...." As petitioner correctly notes, an applicant need only prove that "the persecutor *could* become aware that the applicant possessed the belief or characteristic in question." *Matter of Mogharrabi* at 9 (emphasis added). Considered in its context, however, the quoted statement appears to represent not so much a legal standard which petitioner was required to meet, as a determination by the BIA that the record in this case did not contain certain clearly relevant evidence which would have provided support (though not indispensable support) for applicant's asserted fear of persecution. As such, the quoted statement constituted an accurate representation on a matter plainly appropriate for BIA consideration.

We now consider whether there was substantial support for finding that petitioner failed to demonstrate a well-founded fear of persecution on account of an imputed political opinion. We reiterate at the outset that the petitioner "bears a difficult burden on this issue, because '[a]ll the substantial evidence standard requires is that the BIA's conclusion, based on the evidence presented, be substantially reasonable.'" *Ipina,* 868 F.2d at 514 (quoting *Diaz–Escobar,* 782 F.2d at 1493). The BIA rejected

1. The connection of asylum and deportation to issues of foreign policy may counsel special deference to INS decisions. The Supreme Court recently has written that "INS officials must exercise especially sensitive political functions that implicate questions of foreign relations, and therefore the reasons for giving deference to agency decisions on petitions for reopening or reconsideration in other administrative contexts apply with even greater force in the INS context." *INS v. Abudu,* 485 U.S. 94, 110, 108 S.Ct. 904, 914, 99 L.Ed.2d 90 (1988) (footnote omitted). Although the quoted statement was made in the context of the Court's review of a BIA denial of a motion to reopen a petition for asylum, the Eleventh Circuit has "noted" its relevance to the interpretation of immigration statutes. *Perlera–Escobar v. INS,* 894 F.2d 1292, 1296 n. 3 (11th Cir.1990).

2. Insofar as the claim that petitioner is entitled to asylum by reason of past persecution is not subsumed under the three other claims, he is precluded from raising it now, on appeal, for failure to raise it before the BIA in the first instance. *See infra* p. 8.

the claim for two reasons: first, petitioner did not show that any punishment that he allegedly fears for having aided the guerrillas would amount to "persecution within the meaning of the Act;" second, he failed to establish that the asserted fear was "well-founded." Since we find that the BIA had a substantial evidential basis for finding that the petitioner's fear was not well-founded, we need not consider whether there was "persecution within the meaning of the Act."

■ While its precise contours are not yet definitively established, it is clear that a "well-founded fear of persecution" has both a subjective and an objective component. The subjective component requires that the asserted fear be genuine. The objective component, on the other hand, contemplates that the applicant show "by credible, direct, and specific evidence ... facts that would support a reasonable fear that the petitioner faces persecution." *Diaz–Escobar*, 782 F.2d at 1492. *See also M.A. v. INS*, 899 F.2d 304, 311 (4th Cir. 1990) (en banc) ("To validate the 'well-foundedness' of his fear, [petitioner] must set forth specific, concrete facts"); *Cruz–Lopez v. INS*, 802 F.2d 1518, 1522 (4th Cir.1986) (alien must show that fear has "enough of a basis in *specific* facts to be considered 'well-founded' upon *objective* evaluation") (emphasis added). Moreover, as already noted, we must "respect" the BIA's "application of statutory language to the facts of a particular case." *Umanzor–Alvarado v. INS*, 896 F.2d 14, 15 (1st Cir. 1990).

■ The only "evidential" basis for a "well-founded fear of persecution" was petitioner's statement that extensive military activity in his home region meant that the authorities "could become aware" that he had supplied food to the guerrillas. Even if we were to consider this evidence sufficiently "specific" to satisfy petitioner's burden of proof, the countervailing circumstantial evidence, and the reasonable infer-

ences drawn therefrom, provided ample support for the BIA's contrary conclusion.

First, the last occasion on which petitioner supplied food to the guerrillas was in 1980. Yet petitioner continued to live in El Salvador for four more years. *Cf. Novoa–Umania* at 3 (fact that applicant, subsequent to threats, continued to live for six months in San Salvador, without incident, evidences that there was no ongoing threat of persecution); *Rodriguez–Rivera*, 848 F.2d at 1006 (finding it "significant" that applicant continued to live undisturbed for three months after threat). Moreover, Alvarez admits that the military came to the area two months after this incident, at which time the government soldiers asked his family about the guerrillas. Nevertheless, petitioner has presented no evidence that the military caused any harm, or made any threats, to him or his family, notwithstanding the fact that his family continues to occupy the same farm. *Cf. id.* (fact that family of applicant continues to live in El Salvador unmolested, found relevant in assessing request for asylum); *accord Ipina*, 868 F.2d at 515; *Mendez–Efrain v. INS*, 813 F.2d 279, 283 (9th Cir.1987).

We cannot say that the BIA lacked a substantial basis for its conclusion that Alvarez's fears were not well-founded. In *Novoa–Umania* at 3–4, the petitioner provided evidence that the military in El Salvador thought that he was on the side of the guerrillas and, therefore, twice "registered" him, treated him like "a great criminal," and even threatened to kill him. Yet the evidence that he had lived in El Salvador for more than six months after that, without incident, and later received a passport from the government, was considered sufficient to support the BIA's determination that the petitioner had not established a well-founded fear of persecution.[3] *Novoa–Umania* at 3–4 (upholding BIA's rejection of asylum application notwithstanding evidence of specific threats against petitioner, as threats merely may have "reflected the violent nature of the

---

3. Alvarez too received a passport from the government of El Salvador, after he supplied

food to the guerrillas.

civil war and ... not ... an ongoing threat of persecution as a guerrilla supporter").

## B

Petitioner's second claim is that the BIA erred by denying the claim to asylum predicated on petitioner's political opinion of neutrality. Assuming for present purposes, without deciding, that neutrality constitutes a political opinion within the meaning of the Act and that petitioner has met the burden of proving neutrality,[4] we find nonetheless that there was substantial evidence for the BIA's finding that a fear of persecution on account of a political opinion of neutrality would not be well-founded in these circumstances.

In *Novoa–Umania*, we reasoned that a petitioner who asserts "neutrality" must demonstrate the existence of at least one of the following three conditions in order to satisfy the statutory requirement of a "well-founded fear of persecution on account of ... [a] political opinion."

1) that a group with the power to persecute him intends to do so specifically because the group dislikes neutrals, or 2) that such a group intends to persecute him because he will not accept its political point of view, or 3) that one or more such groups intend to persecute him because each (incorrectly) thinks he holds the political views of the other side.

*Novoa–Umania* at 3.[5]

The present record contains no evidence that neutrals in the Salvadoran civil war are persecuted in retaliation for their neutrality by either of the opposing forces. Petitioner's only proffer of specific evidence in support of this claim is that Salva-

doran soldiers seized and detained him for a period of twenty-four hours in an attempt to recruit him to their cause. Petitioner was released without harm. There was no evidence that the government threatened to harm him, either during his detention or thereafter. *Cf. Mendez–Efrain*, 813 F.2d at 283 (although detained for four days by military, fact that petitioner was released, without being tortured, molested, or even threatened, constitutes "substantial evidence" that he would not be subject to persecution). Indeed, following petitioner's detention he obtained a passport to leave the country, notwithstanding his unwillingness to perform military service. *Cf. Ipina*, 868 F.2d at 515 (fact that she obtained visa and passport is evidence that petitioner's fears were not well-founded); *accord Rodriguez–Rivera*, 848 F.2d at 1006.

We conclude that there is substantial support for the BIA's finding that petitioner's showing was inadequate to support a well-founded fear of persecution.

As concerns the asserted fear of persecution by the guerrillas, petitioner makes no claim that the guerrillas impute to him a political opinion sympathetic to the government. Furthermore, the only specific evidence of contact between petitioner and the guerrillas, which might lead petitioner to fear persecution on account of a position of neutrality, is insufficient to warrant reversal of the findings of the BIA. Petitioner testified that he was approached by guerrillas seeking to enlist him in their cause. Yet, even if forcible recruiting of a "neutral pacifist" by dissident groups should amount to political persecution, petitioner was neither forcibly recruited nor even detained. Rather, after being "asked" if he

---

4. The legal issue remains unsettled. Only the Ninth Circuit clearly has held that neutrality is a political opinion within the meaning of the Act. *See, e.g., Maldonado–Cruz v. INS*, 883 F.2d 788, 791 (9th Cir.1989); *Arteaga v. INS*, 836 F.2d 1227, 1231 (9th Cir.1988). The Eleventh Circuit, on the other hand, explicitly declined to adopt this position. *Perlera–Escobar*, 894 F.2d at 1297–98 n. 4 (adoption of position that neutrality is a political opinion "would create a sinkhole that would swallow the rule"). The Fourth Circuit has found the issue "unclear." *M.A. v. INS*, 899 F.2d 304, 315 (4th Cir.1990).

Apparently only the Ninth Circuit has determined that mere refusal to join the guerrillas is itself a manifestation of neutrality within the meaning of the Act. *Maldonado Cruz*, 883 F.2d at 791.

5. There is substantial evidence to support the BIA's finding that petitioner failed to show a well-founded fear that the Salvadoran government would persecute him because he does not accept its viewpoint or because it believes, albeit incorrectly, that he favors the guerrillas. *See supra*, p. 5.

7

wanted to go with the guerrillas, petitioner declined, not on the ground that he was a neutral pacifist but because he was studying. The only response from the guerrillas was their admonition that he not tell anyone that he had been asked to join them.

We conclude that there is substantial support for the BIA's rejection of asylum on these grounds. *Cf. Novoa–Umania* at 4–5 (alien, whom guerrillas threatened with death and with loss of everything he had, failed to present sufficient evidence to overcome BIA's finding that the threats were too old or too vague to support a well-founded fear).

### C

■ The third claim presented on appeal is that petitioner, as a campesino cheesemaker who has provided the guerrillas with food on occasion, is entitled to asylum on the basis of a "well-founded fear of persecution on account of ... membership in a particular social group." Petitioner argues that cheesemakers are especially likely to be subjected to guerrilla demands for food because the hard cheese the campesinos make is resistant to spoilage. Since petitioner already has acceded to such guerrilla demands, he asserts a fear of persecution by the Salvadoran military.

The BIA rejected the present contention on the ground that fear of persecution on account of "membership in a particular social group," within the meaning of the Act, relates only to persecution "directed toward an individual who is a member of a group of persons all of whom share a common, immutable characteristic [which] ... the members of the group either cannot change, or should not be required to change because it is fundamental to their individual identities or consciences." *Matter of Acosta,* Interim Decision 2986 (BIA 1985). *See also Ananeh–Firempong v. INS,* 766 F.2d 621, 626 (1st Cir.1985) (quoting *Matter of Acosta* ). Since it considered that cheesemaking is not an immutable characteristic which cannot be changed by the campesinos, or which they should not be required to change, the BIA found that petitioner's claim did not meet the statu-

tory requirement. Petitioner responds that there is no merit in the BIA's analysis because he is not simply a cheesemaker but a cheesemaker who already has supplied the guerrillas with food. Since the latter "characteristic" clearly is beyond petitioner's power to change, he asserts that he is a member of a "social group," within the meaning of the Act.

Without endorsing petitioner's strained application of *Matter of Acosta, supra,* we conclude that substantial evidence supports the BIA's denial of petitioner's request for asylum. Petitioner did not establish that "a reasonable person" in his circumstances would fear persecution as a cheesemaker or even as a cheesemaker who has supplied food to the guerrillas. Petitioner presented no specific evidence that *he* or his family was threatened with persecution by the government on account of the fact that they were cheesemakers, or for any other reason.

Moreover, the only basis for petitioner's contention that cheesemakers *as a group* are subject to persecution by Salvadoran authorities is a single 1983 decision by an Immigration Judge, withholding deportation and granting asylum to an applicant who feared that the government would persecute him because the authorities would believe that, as a master cheesemaker, he had sold cheese to the guerrillas. *See Case No. A.26–201–249,* Executive Office for Immigration Review, Baltimore, Maryland (Nov. 2, 1983) (Reply Brief, Appendix, Document 2). In that case, however, the Immigration Judge was presented with testimony by witnesses who had seen the dead bodies of other cheesemakers in the streets of the same area where the applicant in that case had lived. In contrast, the present petitioner not only failed to provide evidence that other cheesemakers had been harmed, but admitted that his own family, and four other families, continue to this day to make cheese in petitioner's village, apparently without harassment by the authorities.

We conclude that the BIA had substantial evidence to support its determination that Alvarez–Flores has not proven that he

has a "well-founded fear of persecution on account of ... membership in a particular social group, or political opinion."

 Petitioner attempts to raise a fourth claim on appeal.[6] Since petitioner did not raise the claim before the BIA, however, the doctrine of exhaustion of administrative remedies precludes it here. *Athehortua–Vanegas v. INS*, 876 F.2d 238, 240 (1st Cir.1989) (since "requirement [of exhaustion] is jurisdictional," we cannot consider issue not raised before BIA); 8 U.S.C. § 1105a(c). *Cf. Vargas v. INS*, 831 F.2d 906, 907–08 (9th Cir.1987) ("Failure to raise an issue in an appeal to the BIA constitutes a failure to exhaust remedies with regard to that question and deprives this court of jurisdiction to hear the matter.").

 Finally, we approve petitioner's request that we reinstate the period of voluntary departure previously granted by the BIA. Although the government argues that the requested relief may be granted only by the district director of the INS, our decisions are to the contrary. *See Umanzor Alvarado* at 16; *Novoa Umania* at 5.

*The petition for review is denied. The voluntary departure period shall commence on the date of the issuance of the court's final mandate.*

---

**6.** In light of petitioner's "pacifist neutrality," he argues that any involuntary "recruitment" would assure persecution, whether by the army or by the guerrillas. While conceding that the raising of an army (with the attendant right to penalize violations of conscription laws) is a legitimate function of government, petitioner asserts that, in this instance, involuntary recruitment would lead to persecution because military service would violate petitioner's genuine political and moral convictions. *But cf. Umanzor–Alvarado* at 15 (evidence that Government will punish alien for failure to serve in army does not show that Government will *persecute* him because of his *political opinion*"). Thus, petitioner implicitly challenges the analysis of political neutrality we adopted in *Novoa–Umania,* for according to that analysis persecution on account of political neutrality requires that the intention of the *persecutor* be the "linch-pin" of the analysis. Quite to the contrary, petitioner

argues that the moral convictions of the victim of the persecution are enough in themselves to constitute persecution "on account of ... political opinion."

Our sister circuits appear divided on the issue. The Eleventh Circuit recently has stated that even though an alien may "fear persecution on account of what he believes to be political opinion ... where fear permeates the life of every citizen, the motivation of the persecutor becomes the linchpin of the analysis." *Perlera-Escobar,* 894 F.2d at 1299. On the other hand, the Ninth Circuit recently held that "punishment of a conscientious objector for refusal to comply with a policy of mandatory conscription may amount to persecution within the meaning of the INA, if the refusal is based upon genuine political, religious, or moral convictions, or other genuine reasons of conscience." *Canas-Segovia v. INS,* 902 F.2d 717, 726 (9th Cir.1990).