USCA1 Opinion

 

 [NOT FOR PUBLICATION] [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 97-1714 JAARAH SALIFU, Petitioner, v. IMMIGRATION AND NATURALIZATION SERVICE, Respondent. ____________________ ON PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS ____________________ Before Torruella, Chief Judge, ___________ Aldrich, Senior Circuit Judge, ____________________ and Boudin, Circuit Judge. _____________ ____________________ John J. Loscocco and Barker, Epstein and Loscocco on brief for _________________ _____________________________ petitioner. Ellen Sue Shapiro, Senior Litigation Counsel, Office of ____________________ Immigration Litigation, Civil Division, Department of Justice, Frank _____ W. Hunger, Assistant Attorney General, Civil Division, and Richard M. __________ __________ Evans, Assistant Director, on brief for respondent. _____ ____________________ February 19, 1998  ____________________ Per Curiam. Jaarah Salifu appeals a decision of the __________ Board of Immigration Appeals, which affirmed an immigration judge's denial of her petition for asylum and withholding of deportation. 8 U.S.C. 1158, 1253(h). We affirm. Salifu, a native of Ghana, attempted to enter the United States through John F. Kennedy Airport in New York on July 1, 1993. The Immigration and Naturalization Service paroled her into the United States and began exclusion proceedings. At an exclusion hearing on November 9, 1993, Salifu conceded excludability but petitioned for asylum and withholding of deportation, alleging that she feared persecution in Ghana on the basis of her political opinion. Evidentiary hearings on the petition were held before an immigration judge on March 30 and August 25, 1994.  Salifu's asylum affidavit states that she was a regional organizing secretary of Ghana's New Patriotic Party, which opposed the ruling junta in an election on November 3, 1992. The next day, Salifu participated in a demonstration protesting fraud in the election. The demonstrators were dispersed by army and police officers, and a curfew was imposed on the area. On November 6, police officers arrested Salifu at home and took her to a police station. The affidavit states that she was held for about two weeks, during which time she was raped twice. Salifu claims that the officers told her she was being held because of her participation in the demonstration.  Salifu's affidavit states that a police officer told her that she would be transferred to Accra, Ghana's capital, and that many prisoners sent there never returned. The officer -3- -3- agreed to help Salifu escape and took her home. Her mother suggested that she go to stay with her grandmother, which Salifu did.  After three months with her grandmother, Salifu said that she decided to contact a friend in Accra. The friend took Salifu in and promised to help her escape from the country. The friend obtained a passport for Salifu in the name of Marian Bigelow and an airline ticket to the United States. The friend also gave her an envelope containing some photographs. During the flight, Salifu destroyed the passport, as her friend had instructed. Salifu was detained by an INS official upon arrival in New York. The official searched her bag and removed the envelope, which contained not only the photographs but also a handwritten letter. Salifu claims she did not write the letter, does not recognize the handwriting, and was unaware that the letter was in her possession until it was found. The letter narrates the experience of a New Patriotic Party activist who was raped; the details are similar in some respects, but not in others, to Salifu's statements in her asylum affidavit.  The INS official then interrogated Salifu. She requested an interpreter who spoke Twi, her native language, but no interpreter was available. Salifu attempted to converse with the officer in English, although she maintains -4- -4- her English was and remains very poor. The INS officer wrote Salifu's answers out in affidavit form, which Salifu signed. This "airport affidavit" was admitted into evidence at the hearing, as were the letter and photographs found in Salifu's possession and a memorandum that the INS officer wrote "to file" after interviewing Salifu. The immigration judge wrote a detailed opinion concluding that Salifu's testimony was not credible. This conclusion was based on Salifu's demeanor on the stand, her inability or refusal to answer simple questions, and inconsistencies between her live testimony, the airport affidavit, and the affidavit filed in support of her asylum petition. The immigration judge concluded that Salifu not carried her burden of proving that she had a "well-founded fear of persecution" on account of her political opinion. Alvarez-Flores v. INS, 909 F.2d 1, 3 (1st Cir. 1990). On ______________ ___ appeal, the Board of Immigration Appeals affirmed the immigration judge's decision. Salifu's argument on appeal comprises an attack on the factfinder's credibility assessments, which must be upheld as long as they are "reasonably grounded in the record, viewed as a whole." Cordero-Trejo v. INS, 40 F.3d 482, 487 (1st _____________ ___ Cir. 1994). We think that the immigration judge was not clearly erroneous in concluding that Salifu's testimony was not convincing. As the judge noted, there were "sufficient -5- -5- inconsistencies in the testimony, asylum application, and affidavitalone to warrant a negative finding of credibility." Salifu argues that the Board violated the policy of our decision in Cordero-Trejo v. INS, 40 F.3d 482 (1st Cir. _____________ ___ 1994). In Cordero-Trejo, we reversed a denial of asylum, _____________ noting that the immigration judge's adverse credibility findings were not based on "any perspectives offered by the unique vantage point of the factfinder, such as witness demeanor, conflicting or confused testimony, etc., from which credibility is typically assessed." Id. at 491. Rather, the ___ immigration judge in Cordero-Trejo discredited the _____________ petitioner's testimony with criticisms that we thought either patently unreasonable or directly refuted by documentary evidence in the record. Nothing like that occurred here. Salifu makes a related legal argument that her own lack of credibility does not dispose of her claim that she has a well-founded fear of persecution. Salifu quotes language from Cordero-Trejo to the effect that an asylum applicant's _____________ testimony must be evaluated in the context of documentary evidence of the political situation in the applicant's home country. Salifu is right that such information is relevant to determine whether a petitioner's fear of persecution is objectively "well-founded." But as a threshold matter, the asylum petitioner must prove that she has an actual subjective fear of persecution. INS v. Cardoza-Fonseca, 480 __________ ___ _______________ -6- -6- U.S. 421, 430-31 (1987). The subjective element of an asylum claim must be "established via the applicant's credible ________ testimony that his fear is genuine." Cordero-Trejo, 40 F.3d _________ _____________ at 491 (emphasis added). In this regard a petitioner's lack of credibility can be dispositive, as it is here. Salifu argues that the immigration judge erred in admitting into evidence the handwritten letter and photographs seized from her at the airport, as well as the INS officer's "memorandum to file." Because the photographs and memorandum do not appreciably strengthen the case against Salifu, we believe their admission, if at all erroneous, was harmless. Rodriguez-Hernandez v. Miranda-Velez, 132 F.3d ___________________ _____________ 848, 855 (1st Cir. 1998). The handwritten letter, on the other hand, was damaging to Salifu. Salifu's sole objection below was that the letter was irrelevant. This objection is without merit. The letter tended somewhat to increase the chance that Salifu was "coached in her story" before leaving Ghana, and that the story was untrue in material respects. On appeal, Salifu asserts that there was no foundation for the letter, specifically, that there was no independent proof that the letter offered was the one found in her possession and that it had not been altered. However, this objection was not made at the time the letter was offered into evidence, so it -7- -7- is deemed waived. United States v. Benavente-Gomez, 921 F.2d _____________ _______________ 378, 385 (1st Cir. 1990). Salifu makes other arguments regarding the definitions of persecution and political opinion. Because the Board correctly affirmed the immigration judge's conclusion regarding credibility, we do not reach Salifu's additional eligibility arguments. Because she does not qualify for asylum, Salifu also does not meet the more demanding standard for withholding of deportation. Alvarez-Flores, 909 F.2d at ______________ 4. Affirmed. ________ -8- -8-