Howard v. Antilla                    CV-97-543-M   10/22/99  P

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**

Robert Howard

    v.                                    Civil No. 97-543-M

Susan Antilla


**O R D E R**

Plaintiff Robert Howard brought this defamation suit to redress injuries he allegedly sustained after defendant Susan Antilla reported rumors regarding his identity in an article published in the *New York Times.*  Howard believes he needs to know the source of those rumors to prosecute his case, while Antilla claims her sources are privileged information.  Before the court are Plaintiff's Motion to Compel Discovery Regarding Unnamed Informants (document no. 31), Defendant's Objection thereto (document no. 32), Plaintiff's Response (document no. 34) and Plaintiff's Supplemental Motion to Compel (document no. 37).  As explained more fully below, Howard's motion is denied.

<u>Background</u>

Howard is chairman of Presstek, Inc., located in Hudson, New Hampshire.  Howard currently resides in New York, but has been a New Hampshire resident.  On October 27, 1994, *The New York Times* published Antilla's article, entitled "Is Howard Really Finkelstein?"  The article raised the question whether Howard was actually Howard Finkelstein, "a convicted felon who went to jail for violations of securities laws, among other things."  Although it is now undisputed that Robert Howard, the plaintiff here, is not Howard Finkelstein, this action arises out of the damage to Howard's personal and business reputation which the article allegedly caused.

<u>Discussion</u>

**1.  Discovery of Privileged Information.**

Discovery in federal litigation is governed generally by Fed. R. Civ. P. 26, which provides, in part, "[p]arties may obtain discovery regarding any matter, <u>not privileged</u>, which is relevant to the subject matter involved in the pending action. . .."  Fed. R. Civ. P. 26(b)(1) (emphasis added).  This discovery dispute centers around whether or not the sources of the reported rumor are privileged and, therefore, protected from discovery.  Discovery of privileged information is governed by the Federal Rules of Evidence.  <u>See</u> Fed. R. Evid. 1101(c) ("The rule with

2

respect to privileges applies at all stages of all actions, cases, and proceedings."); see also Fitzgerald Expressway v. Sewerage Const., Inc., 177 F.3d 71, 74 (1st Cir. 1999) (explaining that even when a federal court exercises its diversity jurisdiction and applies state law to the "substantive rules of decision," "it is equally axiomatic [] that federal evidentiary rules govern"); see also 8 Charles A. Wright, Arthur R. Miller and Richard L. Marcus, Federal Practice and Procedure: Civil 2d § 2016 (1994) (explaining how the same rules of privilege apply to discovery as apply at trial). Federal Rule of Evidence 501 deals explicitly with the question of how to determine what information is privileged, and, therefore, governs this discovery dispute. See id.; see also 19 Wright, Miller and Marcus, supra, § 4512 at 405 (1996) ("If a Federal Rule of Evidence covers a disputed point of evidence, the Rule is to be followed, even in diversity cases, and state law is pertinent only if and to the extent the applicable Evidence Rules makes it so.").

Rule 501, provides, in pertinent part:

> Except as otherwise provided by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person . . . shall be governed by the principles of the

3

> common law as they may be interpreted by the courts of the United States in light of reason and experience.  However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person . . . thereof shall be determined in accordance with State law.

Because Howard invoked this court's diversity jurisdiction to bring his libel action in federal court, see 28 U.S.C. § 1332, "State law supplies the rule of decision."  See Fitzgerald Expressway, 177 F.3d at 73-74 (citing Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938) and Blinzler v. Marriott Int'l Inc., 81 F.3d 1148, 1151 (1st Cir. 1996) to explain that state law provides the "substantive rules of decision" when parties litigate in federal court based on diversity jurisdiction).  As state libel law governs this dispute, whether or not the information sought is protected by a privilege also is a matter of state law.  See Fed. R. Evid. 501, advisory committee notes.

Despite Rule 501's directive to apply state law regarding a press privilege, the parties argue here that whether the confidential sources are protected from discovery depends on a balancing test enunciated in Bruno & Stillman, Inc. v. Globe Newspaper Co., 633 F.2d 583, 596 (1st Cir. 1980).[1]  Bruno &

_____

[1]Howard asserts that Rule 501 requires New Hampshire's privilege rule to govern, but then frames his argument around the Bruno & Stillman, Inc. balancing test.

4

Stillman, Inc. involved a libel claim by a Delaware corporation operating out of New Hampshire which was criticized in a series of articles published by *The Boston Globe* newspaper.  While the court does not explain its decision to forgo state law and, instead, to announce a federal common law privilege rule, when the decision was issued neither Massachusetts nor New Hampshire had a state law based news reporter privilege rule.[2]  Moreover, the decision indicates that the district court had forged a federal common law privilege, which the Court of Appeals was reviewing.  See id. at 585-86.  The Bruno & Stillman, Inc. court appears, therefore, to have fashioned a federal common law qualified privilege rule based on the First Amendment because the state jurisdictions involved had not codified a newsman's privilege and their common law focused on the First Amendment

---

[2]The New Hampshire common law rule pronounced in Downing v. Monitor Publishing Co., Inc., 120 N.H. 383, 415 A.2d 683 (1980), was issued on May 22, 1980, one month before Bruno & Stillman, Inc. was argued at the Court of Appeals.  Presumably the parties in Bruno & Stillman, Inc. did not argue (and had not briefed) the nascent N.H. rule to the First Circuit Court of Appeals.  Similarly, at the time Bruno & Stillman, Inc. was decided, Massachusetts had not codified a newsman's privilege, and its common law discussed any cognizable reporter's privilege within the confines of the First Amendment.  See e.g., In the Matter of Roche, 381 Mass. 624, 631-33, 411 N.E.2d 466, 472-73 (1980) (finding a qualified protection in the First Amendment for the "general right . . . to gather information and prepare it for expression"); cf. In the Matter of Pappas, 358 Mass. 604, 612-14, 266 N.E.2d 297, 302-04, aff'd, 408 U.S. 665 (1971) (applying federal law to find no constitutional newsman's privilege to refuse to testify before the grand jury).

origins of any such protection.  Without an explicit state statutory or common law rule to apply, the court applied a federal common law privilege rule determined "in light of reason and experience" as required by Rule 501.

Bruno & Stillman, Inc. and its progeny[3] set a minimal protection for First Amendment guarantees that arise not only for the press, but for all matters involving free speech.  See In re Cusumano, 162 F.3d at 716 (extending the privilege to academic researchers).  As the court explained:

> Whether or not the process of taking First Amendment concerns into consideration can be said to represent recognition by the Court of a "conditional", or "limited" privilege is, we think, largely a question of semantics.  The important point for purposes of the present appeal is that courts faced with enforcing requests for the discovery of materials used in the preparation of journalistic reports should be aware of the

---

[3]Those cases which have applied the Bruno & Stillman, Inc. privilege rule have involved federal issues or claims, which under Rule 501, "shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in light of reason and experience."  See e.g. In re Cusumano, 162 F.3d 708, 716 (1st Cir. 1998) (applying Bruno & Stillman, Inc.'s balancing test to determine whether a nonparty could be subpoenaed under Fed. R. Civ. P. 45 to produce confidential material); United States v. LaRouche Campaign, 841 F.2d 1176, 1181 (1st Cir. 1988) (allowing television "outtakes" to be subpoenaed in a criminal proceeding after balancing the First Amendment concerns with defendants' need for and any constitutional right to the information sought); see also Fed. R. Evid. 501 (providing that privileges be determined by federal common law unless state law supplies the rule of decision (emphasis added)).

6

> possibility that the unlimited or unthinking allowance of such requests will impinge upon First Amendment rights. In determining what, if any, limits should accordingly be placed upon the granting of such requests, courts must balance the potential harm to the free flow of information that might result against the asserted need for the requested information.

Bruno & Stillman, Inc., 633 F.2d at 595-96. Thus, the Bruno & Stillman, Inc. balancing test sets a constitutional floor upon which states can build to provide additional protections, but beneath which state law cannot fall without offending First Amendment guarantees.

When, as here, the First Amendment concerns arise in the context of a state tort libel action, as opposed to a federal criminal proceeding or an action involving the federal civil subpoena power, Rule 501 requires the privilege rule attendant to the state substantive law to be followed. See Fed. R. Evid. 501, advisory committee notes; see also 8 Wright, Miller and Marcus, supra, § 2016 at 224; 23 Wright, Miller and Marcus, supra, § 5426 at 749; see also 17 Moore's Federal Practice, § 124.09[2](Matthew Bender 3d ed. 1999). The Bruno & Stillman, Inc. rule anticipates such a result, both in its recognition of Rule 501's flexibility and in its directive that all the facts and circumstances of a particular case be considered to resolve a discovery dispute, to avoid "any black letter pronouncement or broad scale confrontation between First Amendment and reputation interests."

7

<u>Bruno & Stillman, Inc.</u>, 633 F.2d at 596.

In this libel action, therefore, either New York or New Hampshire law provides the applicable privilege rule. As explained more fully below, New York law and New Hampshire law regarding a privilege for confidential sources of news differ; however, based on the facts of record before the court, both states' privilege rules protect Antilla's confidential sources from discovery.[4]

### 2. State Privilege Rules.

Under New York law, reporters enjoy an absolute privilege to protect confidential sources of news gathered in the course of preparing a report. <u>See</u> <u>U.S. v. Sanusi</u>, 813 F. Supp. 149, 152-54 (E.D.N.Y. 1992) (canvassing the press privilege law in New York and other jurisdictions). The New York rule provides:

> Absolute protection for confidential news. Notwithstanding the provisions of any

---

[4]Under well-settled <u>Erie</u> doctrine principles, New Hampshire's choice of law rules would be followed to determine which state law to apply if a conflict exists between the state laws. <u>See</u> <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941) (holding the forum state's choice of law doctrine governs); <u>see also</u> <u>Am. Title Ins. Co. v. East West Fin. Corp.</u>, 959 F.2d 345, 348 (1st Cir. 1992). Since the choice of law issue has not been adequately briefed and should be decided based on the libel claim itself, not on the privilege rule attendant thereto, I decline to make a decision at this juncture which is unnecessary to the resolution of the discovery dispute before the court and which would become binding on the parties as the law of the case.

> general or specific law to the contrary,
> no professional journalist or newscaster
> . . . shall be adjudged in contempt by
> any court in connection with any civil or
> criminal proceeding, . . . for refusing
> or failing to disclose any news obtained
> or received in confidence or the identity
> of the source of any such news coming into
> such person's possession in the course of
> gathering or obtaining news for publication
> or to be published in a newspaper . . ..

N.Y. Civ. Rts. § 79-h(b) (McKinney 1992).[5]   Under the New York

rule, in a civil discovery dispute such as this, Antilla's

sources are protected by an absolute privilege.

Under New Hampshire law, reporters enjoy only a qualified

press privilege which is similar to the federal balancing test of

Bruno & Stillman, Inc.   See State v. Siel, 122 N.H. 254, 259, 444

A.2d 499 (1982) (citing N.H. Const., pt. 1, art. 22 as the basis

for a "qualified privilege for reporters in civil cases").   The

New Hampshire rule provides:

> [T]here is no absolute privilege allowing
> the press to decline to reveal sources of
> information when those sources are essential
> to a libel plaintiff's case. . . . Our
> earlier ruling . . . that there is a press
> privilege under the New Hampshire Constitution

_____

[5]Despite this unequivocal pronouncement, the absolute privilege grounded in the First Amendment must yield, at least, in certain criminal proceedings when competing constitutional guarantees are at stake.   See e.g., Branzburg v. Hayes, 408 U.S. 665, 690-92 (1972) (requiring newsman to testify before the grand jury despite confidentiality of news sources); Sanusi, 813 F. Supp. at 155 (overcoming privilege where "necessary to ensure fair judicial process").

> not to disclose the source of information when the press is not a party to an action is not applicable here. That opinion expressly left open "whether libel actions would require disclosure." . . . We do agree that some safeguard should exist to prevent an order of disclosure when the plaintiff's claim of falsehood is entirely baseless. It is sufficient to require that the plaintiff satisfy the trial court that he has evidence to establish that there is a genuine issue of fact regarding the falsity of the publication.

Downing, 120 N.H. at 386-87. The Court further provided that "when a defendant in a libel action, brought by a plaintiff who is required to prove actual malice under *New York Times* [v. Sullivan, 376 U.S. 254 (1964)], refuses to declare his sources of information upon a valid order of the court, there shall arise a presumption that the defendant had no source." Id. at 387. Under New Hampshire law then, when a libel action is brought against a news reporter, the press privilege must yield if the sources of information are essential to the plaintiff's case and the plaintiff has demonstrated that there is a genuine issue of fact regarding the falsity of the publication.

For Howard to overcome New Hampshire's press privilege, he must demonstrate that there is a genuine issue of fact regarding the falsity of the publication and that the identity of the confidential sources is essential to his case. See id. at 386-87. There is no dispute that the reported rumor was false. Thus, the critical issue here is whether the identity of the

10

confidential sources is essential to Howard's libel claim.

Although Howard asserts a libel claim in the complaint, the pleadings, including the instant motion to compel, clearly treat the cause of action as libel by implication.[6] Indeed, facially accurate news reports may give rise to defamatory inferences, which is the essence of Howard's claim here. A claim for libel by implication focuses "not on the explicit statements but rather on the implicit underlying defamatory inference, which may be a malicious calculated falsehood, in which case the Times malice standard would be satisfied." Faigin v. Kelley, No. 95-317-SD, slip op. at 10-11 (finding that defamation by implication is actionable against public as well as private figures).

To prove libel by implication Howard must demonstrate that Antilla subjectively or actually intended to impart the

---

[6]Libel, which seeks to prove the falsity of a defamatory statement, see Faigin v. Kelly, __ F.3d __, No. 98-1589, slip op. at 8 (1st Cir. July 19, 1999) (citing New Hampshire libel law), would not be appropriate here, where Howard has conceded that rumors were spread that he was Howard Finkelstein prior to the article's publication on October 27, 1994. See Plaintiff's Response to Defendant's First Request for Admissions (Exhibit A to Defendant's Objection). The defamatory publication, therefore, was technically an accurate report of the rumors being disseminated, and proof of its falsity would be impossible. Nonetheless, this facially accurate factual report implied an underlying defamatory doubt regarding Howard's background which is actionable. See Faigin v. Kelly, No. 95-317-SD, slip op. at 9 (D.N.H. Mar. 12, 1998) (citing White v. Fraternal Order of Police, 909 F.2d 512, 518 (D.C. Cir. 1990) to explain libel by implication).

11

defamatory implication of the reported rumor.  See id., slip op. at 14; see also Dodds v. Am. Broadcasting Co., 145 F.3d 1053, 1064 (9th Cir. 1998), cert. denied, ___ U.S. ___ 119 S. Ct. 866 (1999) (explaining that "all the courts of appeal that have considered cases involving defamation by implication have imposed a similar actual intent requirement").

> [B]ecause the Constitution provides a sanctuary for truth, a libel-by-implication plaintiff must make an especially rigorous showing where the expressed facts are literally true.  The language must not only be reasonably read to impart the false innuendo, but it must also affirmatively suggest that the author intends or endorses the inference.

Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1093 (4th Cir. 1993).  Thus, Howard's burden lies in proving how the language of the article "affirmatively suggests" that Antilla intended to create the inference, or endorsed the inference, that the rumor had some truth to it.  See id.; see also Dodd, 145 F.3d at 1064 (citing other circuit decisions holding that "the particular manner or language in which the true facts are conveyed" must affirmatively demonstrate that the defendant intended to create the defamatory inference).

Howard has failed to demonstrate how the names of the confidential sources would in any way shed light on what Antilla subjectively intended to convey in her article.  See White, 909 F.2d at 519-20 (distinguishing between libel's objective standard

and the subjective test of libel by implication).  Howard
concedes that short-sellers were spreading the rumor that he was
Howard Finkelstein; that the Securities and Exchange Commission
would not clarify the confusion between the two individuals; and
that Howard Finkelstein is a convicted felon who used the name
Robert Howard as an alias.  The article, therefore, conveyed
"materially true facts from which a defamatory inference can
reasonably be drawn," but which is not enough to establish libel
by implication.  Id. at 520.  Howard's burden is not to establish
that Antilla recklessly or maliciously disregarded the veracity
of her sources, see Downing, 120 N.H. at 386, but rather to
establish that she reported the rumors in a way which could be
read to endorse the defamatory inference they created.  See
White, 909 F.2d at 520 (requiring the language of the
communication to "suppl[y] additional, affirmative evidence
suggesting that the defendant *intends* or *endorses* the defamatory
inference" (emphasis in original)).

The names of the confidential sources simply are not
essential to Howard's claim of libel by implication.  The names
will not provide information regarding what Antilla intended to
convey when she wrote the article or whether she endorsed the
rumor reported.  Absent evidence that the names are essential to
his claim, Howard has failed to overcome New Hampshire's

13

qualified press privilege.

Accordingly, under either New York and New Hampshire privilege rule, the names of the confidential informants are protected from discovery.

<u>CONCLUSION</u>

For the reasons set forth above, Howard's Motion to Compel (document no. 31) is denied.

**SO ORDERED.**

_____
James R. Muirhead
United States Magistrate Judge

Date: October 22, 1999

cc:     Charles G. Douglas, III, Esq.
        Peter W. Mosseau, Esq.
        Jonathan M. Albano, Esq.

14