921 F.2d 272
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Mohammed QASIM, Sarah Qasim, Petitioners,
v.
U.S. IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
 No. 90-2027.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 2, 1990.
Decided Dec. 26, 1990.
 
 On Petition for Review of an Order of the Board of Immigration Appeals. (A26-594-760; Avw-ggb-kza).
 Carole Lynn Calder, Allen & Pinnix, Raleigh, N.C., (argued) for petitioners.
 
 
 1
 John L. Pinnix, Allen & Pinnix, Raleigh, N.C. on brief. Alison Ruth Drucker, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington D.C., (argued) for respondent; Stuart M. Gerson, Assistant Attorney General, Richard M. Evans, Assistant Director, Stewart Deutsch, Mark C. Walters, Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington D.C., on brief.
 
 
 2
 B.I.A.
 
 
 3
 AFFIRMED.
 
 
 4
 Before SPROUSE and WILKINS, Circuit Judges, and MERHIGE, Senior United States District Judge for the Eastern District of Virginia, Sitting by Designation.
 
 PER CURIAM:
 
 5
 This petition for review constitutes an appeal from an order of the Board of Immigration Appeals (the "Board") upholding a decision of an immigration judge that denied petitioners' application for asylum and withholding of deportation. Additionally, the Board set aside the judge's order denying petitioners' request for voluntary departure and granted the same with an alternative order of deportation.
 
 
 6
 We affirm the Board in all respects.
 
 BACKGROUND
 
 7
 According to Mr. Qasim, the following represents a summary of facts which he argues warrants a reversal of the Board's denial of the petitioners' application for asylum and withholding of deportation.
 
 
 8
 Petitioners Mohammed and Sarah Qasim are husband and wife, who--along with their two sons Naeem and Zaheem--have applied for the withholding of deportation and for asylum. Because Sarah Qasim has applied derivatively as Mohammed Qasim's wife, the Court need review the disposition only of Mohammed Qasim's application. Qasim and his family, nationals of Bangladesh, are members of a distinct ethnic group known as "non-Bengalees/Biharies" (hereinafter "non-Bengalees").
 
 
 9
 Mohammed Qasim, who was born in India, moved to East Pakistan in 1956. In 1971, after East Pakistan became the independent nation of Bangladesh, the new government gave each citizen the choice of swearing allegiance to Bangladesh or of being repatriated to Pakistan. The Qasims chose to remain citizens of Pakistan. The Government of Pakistan, however, repatriated only several thousand non-Bengalees and most remained stranded in Bangladesh. In May 1983, the government of Pakistan indicated that it would not repatriate any more non-Bengalees. As a result, many non-Bengalees exist now in a stateless condition. For example, although Qasim holds a Bangladesh passport, he is not a citizen of that state, having lost citizenship in 1971 by opting for repatriation to Pakistan; yet, he also is unable to return to Pakistan.
 
 
 10
 Qasim claims that he has faced numerous instances of persecution as a non-Bengalee residing in Bangladesh. Qasim has testified that five times under martial law he was arrested absent purpose. In particular, in February 1974, he was accused of supporting Pakistan's army and police interrogated him, depriving him of food and drink for twelve hours. In August 1975, Qasim asserts, a Major Shamsuzzaman filed criminal charges against Qasim in an attempt to force him to pay a $2,000 debt of a third person. Allegedly, the Major had Qasim harassed, imprisoned and tortured before forcing him to sign a confession, admitting that he possessed the money to pay the debt. Yet, Qasim prevailed in the court proceedings. Qasim testified that the Major reinstituted the harassment and threats in 1982, ordering a local official to pick up Qasim in the middle of the night and extorting payments from him for his release.
 
 
 11
 Qasim contends that he was employed by the Bangladesh Handicrafts Cooperative until the government took over the business in 1982 and forced him to resign. While employed there, Qasim had traveled freely to other countries. Subsequently, Qasim started his own export firm and on three occasions was forced to bribe government officials to obtain business registrations. He asserts that these bribes were demanded because he is non-Bengalee. Prior to leaving Bangladesh, Qasim kept at least several thousand dollars in United States banks. Bangladesh allows foreign exchange of no more than $600 US absent official approval. Upon arriving in Pakistan, Qasim arranged for remittance of $5,000 US, the exchange of which was stamped into his passport. Qasim complains that if he returns to Bangladesh he will be persecuted for illegally carrying foreign currency.
 
 
 12
 Qasim has applied for withholding of deportation, pursuant to 8 U.S.C. Sec. 1253(h), and for asylum, pursuant to 8 U.S.C. Sec. 1158. Conforming with INS regulations, in February 1984 Qasim submitted an application to the State Department's Bureau of Human Rights and Humanitarian Affairs, which concluded that the application did not evidence "a well-founded fear of persecution." In December 1986, an immigration judge heard evidence on the application and entered his decision ordering deportation. The judge rejected Qasim's claim that he would be persecuted if he returned, commenting that "almost all of the evidence ... indicates otherwise." In justifying his conclusion, the judge stressed Qasim's relative affluence in Bangladesh, as well as Qasim's failure to remain in Pakistan after leaving Bangladesh. The judge found that Qasim's "only fear is that of prosecution for his illegal currency transactions."
 
 
 13
 In January 1990, the Board affirmed the immigration judge's decision. The Board found two bases for his alleged fear of persecution. First, the Board discussed Qasim's mistreatment by Major Shamsuzzaman, which it characterized as a problem "personal" in nature and not arising from persecution as defined by the act. Second, the Board discussed Qasim's fear as a non-Bengalee. The Board concluded that the record revealed no evidence of particularized persecution against Qasim due to his ethnicity and little evidence of generalized persecution against non-Bengalees in Bangladesh. In short, the Board accepted the initial assessment put forward in the State Department's Advisory Opinion that "those Biharis who remain in Bangladesh and who have not opted for Bangladeshi citizenship are housed in camps, are free to come and go at will, to seek employment, and to conduct other normal activities." In affirming the immigration judge, the Board concluded that had Qasim truly feared persecution, he would have remained outside of Bangladesh on one of his earlier trips. The Board set aside a finding by the immigration judge that the petition was frivolous, allowing petitioners leave to voluntarily depart with an alternative of an order of deportation.
 
 DISCUSSION
 I. The Applicable Law
 
 14
 An application for asylum, such as the one at issue here, also is construed as a request to withhold deportation. Asylum, while the greater form of relief, is discretionary while withholding deportation is mandatory for those eligible. See generally INS v. Cardoza-Fonseca, 480 U.S. 421 (1987); INS v. Stevic, 467 U.S. 407 (1984). The Attorney General has discretion to grant asylum for "refugees," whom the Act defines as persons unable to return to their countries "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group or political opinion." Cardoza-Fonseca, 480 U.S. at 428 (quoting 8 U.S.C. Sec. 1101(a)(42)). The touchstone of such an analysis is whether the individual has shown a well-founded fear of persecution based on proof that persecution is "reasonably possible." Id. at 440. After such a finding, the court has discretion to grant asylum. In contrast, the withholding of deportation requires a greater showing by the petitioner, in short that there is "a clear probability of persecution." Stevic, 476 U.S. at 430. Upon finding a "clear probability of persecution," the court must withhold deportation. An alien seeking asylum or withholding of deportation bears the burden of presenting a prima facie case that he or she will be singled out for persecution. See Cruz-Lopez v. INS, 802 F.2d 1518, 1520-21 (4th Cir.1986); Cardoza-Fonseca v. INS, 767 F.2d 1448, 1453 (9th Cir.1985), aff'd, 480 U.S. 421 (1987). To satisfy this requirement the petitioner must show that his or her plight differs from the dangers faced by ordinary citizens and that the singling out is due to one of the five enumerated statutory grounds.
 
 
 15
 In reviewing findings of immigration judges and the Board that a petitioner did not have the well-founded fear of persecution necessary for asylum, a reviewing court first must determine whether substantial evidence supports the finding. If substantial evidence supports the finding, the reviewing court of appeals must affirm the decision below. Ipina v. INS, 868 F.2d 511, 513-14 (1st Cir.1989). "All the substantial evidence standard requires is that the Board's conclusion, based on the evidence presented, be substantially reasonable." Diaz-Escobar v. INS, 782 F.2d 1488, 1493 (9th Cir.1986).*
 
 
 16
 II. The Denial of Asylum and of Withholding of Deportation
 
 
 17
 The Board had substantial evidence to reasonably conclude that Qasim's assertions did not give rise, as he asserts, to a well-founded fear of persecution because of his race. Qasim's contention is primarily premised on his alleged dealings with Major Shamsuzzaman, which give rise to a well-founded fear of persecution based on his race. Qasim insists that he had no role in the Major's financial dealing, but rather that he only witnesses a transaction and did not owe the Major any money. Apparently, Qasim asserts that the only reasonable inference available from this fact is that the Major was persecuting him as a non-Bengalee. The Board reasonably rejected that inference. The Board stated that whether Qasim owed the Major money, or was a witness or guarantor to the transaction, was irrelevant. Rather, the Board concluded that Qasim simply failed to enter enough evidence that the Major mistreated him because Qasim is non-Bengalee. The Board had substantial evidence to conclude that the Major's conduct was for reasons other than Qasim's ethnicity. The immigration judge and the Board reasonably found that Qasim's mistreatment occurred due to Qasim's position of wealth in Bangladesh and this somewhat ambiguous financial event with the Major. Furthermore, the tribunals below inferred that the conduct was not persecutorial due to Qasim's failure to remain abroad during numerous opportunities prior to his final departure from Bangladesh.
 
 
 18
 Citing Desir v. Ilcert, 840 F.2d 723 (9th Cir.1988), petitioners argue that the harassment as a result of the financial dealings supports a finding of well-founded fear. In Desir, the Ninth Circuit held that a petitioner had been persecuted where he had been beaten, threatened and forced to leave the country as a result of failing to pay bribes to government authorities. Id. at 729. Unlike the petitioner in Desir, however, Qasim found protection in the local courts, which acquitted him of the charges filed by the Major. This result undercuts the contention, successfully argued in Desir, that the mistreatment is tied to official state policy. The immigration judge and the Board thus had substantial evidence to determine that Qasim's financial dealings with the Major were not motivated by racial animus and that Qasim failed to present a sufficient case that these dealings demonstrated that he had been singled out for persecution.
 
 
 19
 Qasim also argues that his fear of prosecution for violation of currency exchange laws amounts to fear of persecution. Fear of prosecution for a criminal offense generally cannot support allegations of fear of persecution. See M.A. A26851062 v. INS, 899 F.2d 304, 312 (4th Cir.1990). Courts have recognized exceptions where the imposition of criminal sanctions is related to persecution or unfairly discriminates against a single group. Qasim, however, admits that the currency law, which he violated, applies equally to all Bangladeshi nationals. His fear of prosecution thus fails to amount to fear of persecution.
 
 
 20
 Qasim puts forth several other factors to assert that his fear of persecution is well-founded. He mentions his loss of employment in 1980, his need to pay bribes to obtain a passport and to continue in business, his children's denial of educational opportunities and his family's impending poverty if returned. The Board found that these troubles primarily resulted from the Bangladeshi government giving priority to individuals who swore allegiance to it. The fact that the Bangladeshi government may, as petitioners contend, demand bribes of residents and business people does not clearly indicate a discriminatory intent. This evidence therefore fails to undermine the conclusion that the tribunals below had substantial evidence to find as they did.
 
 III. The Motions to Remand
 
 21
 Petitioners have submitted two motions to remand: the first predicated on the courts' decisions below and the second based on INS regulations now in effect.
 
 A. The Credibility Issue
 
 22
 Petitioners assert that this Court should remand the case for a determination regarding the credibility of Qasim's testimony. Pointing to a portion of the Board opinion stating that whether Qasim's "allegation [concerning the Major] is true is irrelevant," petitioners argue that the Board failed to determine his credibility as it must. Although it may be proper, or even necessary, to remand to the Board for determinations of credibility where the Board has expressly abstained from making such determinations, this is not such a case. The Board statement to which petitioners refer in no way suggests that the Board failed to believe Qasim's allegations. Rather the statement simply suggested that assuming the truth of the allegations, they still did not amount to a viable claim of persecution. There is no need to remand for a determination of credibility.
 
 B. New Regulations
 
 23
 Finally, petitioners argue that this Court should remand to allow application of new INS regulations governing the Refugee Act of 1990. These new procedures, effective October 1, 1990, allow petitioners to show that they are part of a group that has been subject to persecution rather than show that they have been singled out for persecution. Qasim argues that justice demands remanding his case to allow the INS to review his claim under the new guidelines.
 
 
 24
 The new regulations expressly provide that they shall apply only to claims filed on or after October 1, 1990. It is clearly improper for this Court to remand simply because new regulations are in effect. Even if this Court were to remand, it would be improper for the administrative courts below to reconsider the application under the new guidelines. By their own terms, the new guidelines thus do not detract from the finality of the prior adjudication of the petitioners' application and do not justify granting a motion to remand.
 
 
 25
 AFFIRMED.
 
 
 
 *
 In reviewing a discretionary grant or denial of asylum after a finding of a well-founded fear, the court applies an abuse of discretion standard of review. Ipina, 868 F.2d at 513