Mohammed MEGUENINE, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 97–1991.

United States Court of Appeals,
First Circuit.

Heard Feb. 4, 1998.

Decided March 17, 1998.

Robert M. Warren, Goodland, KS, for Petitioner.

Margaret Perry, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom Mark C. Walters, Assistant Director, and Frank W. Hunger, Assistant Attorney General, Civil Division, Washington, DC, were on brief, for Respondent.

Before BOUDIN, Circuit Judge, ALDRICH, Senior Circuit Judge, and LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

Petitioner Mohammed Meguenine seeks reversal of an order of the Board of Immigration Appeals (BIA or Board) denying his application for asylum under the Immigration and Nationality Act (INA) § 208, 8 U.S.C. § 1158, and his application for withholding of deportation under INA § 243(h), 8 U.S.C. § 1253(h). Meguenine's most substantial claim is that the agency improperly required him to produce evidence of individualized threats of persecution in violation of 8 C.F.R. § 208.13(b)(2) (1997). Although the BIA failed to refer to that regulation in its opinion, its reasoning was consistent with the regulation and was otherwise supported by "substantial evidence." We affirm.

## I.

Mohammed Meguenine is a citizen of Algeria who came to the United States on July 19, 1993 on a six-month tourist visa at a time when violence between Algeria's military government and its armed Islamic fundamentalist opponents was growing. Meguenine overstayed his visa. On February 9, 1995, he applied for asylum under INA § 208(a), which gives the Attorney General discretion to grant asylum to "refugees," as defined by the INA, and for withholding of deportation under INA § 243(h), which requires the Attorney General to withhold deportation to a country in which an alien is "likely" to face persecution on account of specified grounds. Following his interview with an asylum officer, the Immigration and Naturalization Service (INS) brought deportation proceedings against him. At a proceeding before an Immigration Judge (IJ), Meguenine conceded deportability, and reasserted his application for asylum and withholding of deportation.

The IJ found Meguenine ineligible both for asylum and for withholding of deportation, and agreed to grant him voluntary departure in lieu of deportation. Meguenine appealed the IJ's decision to the BIA. On August 7, 1997, the BIA affirmed the IJ's decision. Meguenine's case is governed by the "transitional rules" of the Illegal Immigration and Immigrant Responsibility Act of 1996 (IIRIRA), Pub.L. No. 104–208, Div. C., 110 Stat. 3009–546 (enacted Sept. 30, 1996). That is because the BIA's decision dismissing his case was issued after October 31, 1996, but proceedings were brought against him prior to April 1, 1997 (IIRIRA's "Title III–A effective date"). See IIRIRA § 309(c)(1), as amended by Act of Oct. 11, 1997, § 2, Pub.L. No. 104–302, 110 Stat. 3656, 3657 (aliens "in proceedings" before April 1, 1997, but whose deportation becomes final after October 31, 1996, are governed by IIRIRA's "transitional rules"). In general, under those "transition rules," aliens appealing a denial of a decision to grant asylum under INA § 208(a) or to withhold deportation under INA § 243(h) must file a petition for review within thirty days under former INA § 106. See IIRIRA § 309(c)(4) (providing that aliens under the "transition rules" continue to be governed by former INA § 106, subject to certain exceptions which do not apply here). As Meguenine filed the requisite petition for review within thirty days, this court has jurisdiction.

## II.

Meguenine's application for asylum must be understood in light of the violent conflict between the Algerian government and its armed Islamic fundamentalist opponents. In 1989, Algeria opened its political process to parties other than its ruling secular party. An Islamic fundamentalist party, the Islamic Salvation Front, soon became the most important opposition party. In December 1991, the government held elections in two stages. After the Islamic Salvation Front won the first stage, the military cancelled the second stage. The civilian president resigned and a military junta took power. Radical Islamic fundamentalists, who had recently formed the Armed Islamic Group, launched terrorist attacks to destabilize the new government. The military government's forces fought back. Both sides have acted with considerable brutality toward the civilian population. So far, tens of thousands of Algerians have died in the conflict.

Meguenine worked for many years as a nurse in a government-run hospital in his

native city of Oran, Algeria. He testified before the IJ that he is a moderate Muslim, not a fundamentalist, that he favors neither side in the present conflict, and that he has never been active in politics. He nevertheless seeks asylum because, he says, the Islamic fundamentalists have targeted health care workers in general, and those at his hospital in particular, if they refuse to accede to demands that they stop treating government soldiers who are injured in the violence. Meguenine says that, as a health care professional, he feels ethically obliged to treat any injured person regardless of that person's beliefs or affiliation in the present conflict, and that he feared violence because of a threatening terrorist note at his hospital that warned hospital personnel not to treat soldiers. Meguenine notes that, after this note appeared, other health care workers at his hospital and elsewhere in the country were injured or killed by the terrorists. He contends that this evidence suffices to show that he has a "well-founded fear of persecution on account of" either his "religion" as a moderate Muslim, his "membership in a particular social group" of health care professionals, or his "political opinion" of neutrality in the conflict. INA § 101(a)(42)(A), 8 U.S.C. § 1101(a)(42)(A) (1994).

The BIA disagreed. First, it considered the evidence Meguenine placed before the IJ in support of his contention that neutral health care workers are, in general, subjects of systematic persecution by the Islamic fundamentalist groups. Finding this evidence insufficient to show that such persecution of *neutral* health care workers was taking place on a systematic basis, it concluded that Me-

guenine had not shown that a nexus existed between his fear of harm at the hands of the Islamic fundamentalists and his status as a nurse in a government-run hospital. Second, it considered a threatening note Meguenine observed personally at his hospital. The Board found that this threat was too general and isolated to cause Meguenine reasonably to fear that he personally had been targeted for persecution on account of his refusal to accede to demands that he refuse to treat soldiers fighting the Islamic fundamentalists.

### III.

 On a petition for review under old INA § 106, this court reviews the BIA's decision that Meguenine is ineligible for asylum and withholding of deportation to determine of it is supported by "substantial evidence." *Ipina v. INS,* 868 F.2d 511, 513 (1st Cir.1989).[1] The court reviews the BIA's legal conclusions de novo, although it gives deference, where appropriate, to the agency's interpretation of the underlying statute in accordance with administrative law principles. *See Alvarez–Flores v. INS,* 909 F.2d 1, 3 (1st Cir.1990).

It is important to note that the BIA did not reject Meguenine's application as a matter of law because it regarded Meguenine's theory of persecution as legally insufficient to establish eligibility for asylum. The BIA's decision took no position on whether a health care professional who refuses to violate his ethical obligations to treat all injured combatants in a violent conflict, and who has a well-founded fear of persecution for taking such a stand, qualifies as a "refugee" under INA § 101(a)(42)(A).[2] Rather, it rejected

---

1. If the BIA had found Meguenine eligible for asylum, but rejected his application in an exercise of discretion, we would review such a decision for "abuse of discretion." *See Ipina,* 868 F.2d at 513.

2. If the BIA had rejected Meguenine's application on legal rather than factual grounds, we would be faced with a question of law. This court has previously wrestled with the standard for determining when an applicant is eligible for asylum when the applicant faces the prospect of persecution because of his refusal to take sides in a conflict. *See Novoa–Umania v. INS,* 896 F.2d 1, 3 (1st Cir.1990) (setting forth standard for proving a "well-founded fear" on account of a political opinion of neutrality).

At oral argument in this case, the government attorney contended that the statutory term "particular social group" should be interpreted to mean a group with some immutable trait (such as an ethnic group) or a mutable trait which a member of that group should not, in good conscience, be required to change (such as a religious adherent's beliefs), and this court has previously expressed approval of this definition. *See Ananeh–Firempong v. INS,* 766 F.2d 621, 626 (1st Cir.1985). A health care worker who refuses to violate the fundamental ethical obligations of his profession may fit into the latter category. However, because the Board did not take the position that Meguenine's legal theory was insufficient to support an application for asylum, but rather

Meguenine's application because it found the evidence that he presented insufficient to show that the Islamic fundamentalists were in fact systematically targeting neutral health care workers, and that the evidence that he individually had faced threats for this reason was too scant to support eligibility for asylum.

■ Meguenine first argues that the BIA committed legal error. He says that the BIA's decision, which relied in part on the lack of threats directed at him individually, violated a regulation that governs the circumstances in which an applicant may be required to produce such evidence. · That regulation, 8 C.F.R. § 208.13(b)(2)(i) (1997), provides:

> In evaluating whether the applicant has sustained his burden of proving that he has a well-founded fear of persecution, the Asylum Officer or Immigration Judge shall not require the applicant to provide evidence that he would be singled out individually for persecution if:
>
> (A) He establishes that there is a pattern or practice in his country of nationality or last habitual residence of persecution of groups of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and
>
> (B) He establishes his own inclusion in and identification with such group of persons such that his fear of persecution upon return is reasonable.

Although the BIA did not mention this regulation in its opinion, its reasoning is entirely consistent with it and we find no violation. The regulation puts the burden on Meguenine to "establish that there is a pattern or practice" of persecution directed at "persons similarly situated to the applicant" and to establish his inclusion in such a group. The BIA's decision first considered whether Meguenine had shown that neutral health care workers face systematic persecution from the Islamic fundamentalists. Only after it had found Meguenine's evidence insufficient to show such a "pattern or practice" of persecu-

tion did it consider whether the threatening note at Meguenine's hospital was sufficiently directed at Meguenine to cause him reasonably to fear harm because he personally had been targeted for his persistence in treating all patients regardless of their political or religious beliefs or affiliation in the present conflict. This is precisely the procedure that the regulation contemplates.

■ As the BIA's decision is not based on an error of law, we review these conclusions to determine if they are supported by substantial evidence. A reasonable factfinder could determine on this record, as did the BIA, that there was no pattern or practice targeting neutral health care workers and that Meguenine's claimed fears stemmed from the general insecurity in Algeria and not from persecution against him on one of the statutorily enumerated grounds. *See INS v. Elias–Zacarias,* 502 U.S. 478, 483–84, 112 S.Ct. 812, 816–17, 117 L.Ed.2d 38 (1992).

In support of his claim that health care workers were subject to systematic persecution at the hands of the Islamic fundamentalists if they refused demands not to treat government soldiers, Meguenine proffered the following evidence. First, Meguenine testified to the anonymous warning note at his hospital. Second, he testified that the newspaper reported that a gynecologist at that hospital was murdered by the fundamentalists because he treated women. Meguenine also had heard that his friend, a nurse, was murdered even though, according to Meguenine, "he never speak out (*sic*)." He had also heard that his superior, the director of the hospital, was shot and injured by the terrorists and fled to France. Next, he proffered testimony by a lawyer who does business in Algeria who said that Meguenine's story was plausible and that threats such as the note on the wall were to be taken "very seriously" and that "virtually anyone" working for a government institution in Algeria, such as a hospital, could be a target of terrorist violence. Finally, Meguenine submitted human rights reports that recount the terrorist assassinations of three prominent physicians elsewhere in the country.

rejected his application for failure of proof, we do not reach this issue.

This evidence did not compel the Board to find in Meguenine's favor, either on his claim that health care workers faced systematic persecution or on his claim that he reasonably feared persecution individually. The evidence could be read to tend to support the accuracy of Meguenine's contentions, but it is not so persuasive that we feel free to reject the BIA's conclusions when reviewing the BIA "under a deferential substantial evidence standard." *Cordero–Trejo v. INS*, 40 F.3d 482, 487 (1st Cir.1994) (citations and internal quotation marks omitted).

In turn, the BIA's reasons for rejecting Meguenine's arguments are rational. The Board noted that, according to the human rights reports, the three prominent physicians who were assassinated were prominent opponents of the fundamentalists, not apolitical health care workers like Meguenine. Indeed, those reports contained exhaustive lists of those groups that the fundamentalists had singled out for persecution, and "health care workers" who choose to remain neutral were not among them. Those reports also lend support to the government's view that terrorist violence is indiscriminate and is not directed at any particular identifiable group of civilians other than known supporters of the government. Next, the Board observed that Meguenine failed to present competent evidence concerning the reason why the physicians at his hospital were attacked, thus raising the possibility that they were also targeted for their opposition to the fundamentalists rather than because of their status as health care workers. The Board also noted that hundreds of nurses worked at the hospital who had not been harmed, even though, like Meguenine, they had not heeded the threat. Finally, the Board noted that Meguenine worked at the hospital for more than a year after the threat appeared, undercutting his claim that the threat reasonably caused him to fear persecution from the fundamentalists.

■ This was a valid application of the "well-founded fear" standard as set forth in *Matter of Mogharrabi*, 19 I. & N. Dec. 439 (BIA 1987). It is entirely reasonable for people to fear harm if they are required to return to Algeria during the current conflict, but Congress has not chosen to open the door to this country on such a basis. As the government correctly notes, it is the law that general fears (even "well-founded" ones) of future harm from political upheaval or terrorist violence are not sufficient to establish eligibility for asylum under § 208(a) of the INA. *See Novoa–Umania*, 896 F.2d at 5. The BIA chose to reject Meguenine's argument that the facts establish that an identifiable group of "health care workers" face a "pattern or practice" of persecution in Algeria from armed Islamic fundamentalist terrorists if they persist in treating government soldiers. A careful review of the record reveals that substantial evidence permitted the Board's conclusion. Likewise, the Board could reject Meguenine's fears of specific harm on this record as insufficiently severe and particular to support eligibility for asylum or for withholding of deportation.

The order of the Board of Immigration Appeals is *affirmed*.