**Abiddine DEBAB, Petitioner,**

v.

**IMMIGRATION AND
NATURALIZATION SERVICE,**
Respondent

No. 98–1266.

United States Court of Appeals,
First Circuit.

Heard Oct. 5, 1998.

Decided Dec. 22, 1998.

Maureen O'Sullivan, with whom Harvey Kaplan, Jerry Friedman, and Kaplan, O'Sul-

livan & Friedman were on brief, for petitioner.

Alison Marie Igoe, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom Christopher C. Fuller, Senior Litigation Counsel, Office of Immigration Litigation, and Frank W. Hunger, Assistant Attorney General, Civil Division, were on brief, for respondent.

Before TORRUELLA, Chief Judge,
BOWNES, Senior Circuit Judge, and
LYNCH, Circuit Judge.

LYNCH, Circuit Judge.

Abiddine Debab, an Algerian immigrant, seeks reversal of an order of the Board of Immigration Appeals. That order affirmed the decision of the Immigration Judge denying his application for political asylum under the Immigration and Nationality Act ("INA") § 208, 8 U.S.C. § 1158, and his application for withholding of deportation under INA § 243(h), 8 U.S.C. § 1253(h) (1996), *amended by* the Illegal Immigration and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub.L. No. 104–208, § 307(a), 110 Stat. 3009–546.

The BIA concluded that the IJ had correctly determined that Debab failed to establish either past persecution or a well-founded fear of future persecution on account of any of the five statutorily protected grounds—"race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). Here Debab argues first that his evidence showed that threats he admittedly received came from members of the armed Islamic insurgency against the Algerian government. This, he says, shows persecution on account of political opinion and social group membership. Because there is substantial evidence to support the Board's determination against Debab on his first argument, we affirm.

### I

Debab, an Algerian citizen, came to the United States from Algeria on October 19, 1994 holding a visa as a non-immigrant visitor for pleasure. His visa permitted him to remain in the United States until April 18, 1995. In December 1994, Debab applied for asylum under INA § 208(a), which gives the Attorney General discretion to grant asylum to "refugees" as defined by the INA, and for withholding of deportation under INA § 243(h), which requires the Attorney General to withhold deportation to a country in which an alien would be threatened with persecution on account of one or more of the five specified grounds. Following the denial of Debab's asylum application, the Immigration and Naturalization Service ("INS") brought deportation proceedings against him. At a proceeding before an IJ, Debab conceded deportability and reasserted his application for asylum and withholding of deportation.

In a January 9, 1997 decision, the IJ found Debab ineligible both for asylum and for withholding of deportation, and agreed to grant him voluntary departure in lieu of deportation. Debab appealed the IJ's decision to the BIA. On February 13, 1998, the BIA affirmed. Debab now appeals.

### II

Debab's case is governed by the "transitional rules" of the IIRIRA. That is because the BIA's decision dismissing his case was issued after October 31, 1996 but proceedings were brought against him prior to April 1, 1997 (IIRIRA's "Title III–A effective date"). *See* IIRIRA § 309(c)(1), 110 Stat. at 3009–625, *as amended by* Act of Oct. 11, 1997, Pub.L. No. 104–302, § 2, 110 Stat. 3656, 3657; *cf. Goncalves v. Reno*, 144 F.3d 110, 116 (1st Cir.1998) (discussing the transitional rules). In general, under those transitional rules, aliens appealing a denial of a decision to grant asylum under INA § 208(a) or to withhold deportation under INA § 243(h) must file a petition for review within thirty days under former INA § 106. *See* IIRIRA § 309(c)(4), 110 Stat. at 3009–626. As Debab filed the requisite petition for review within thirty days, this court has jurisdiction, and the parties do not contend otherwise.[1]

---

1. As discussed below, Debab has also filed a Motion to Reopen with the BIA pursuant to 8

C.F.R. § 3.2(c) (1998). Neither Debab nor the INS contends that the fact that this motion is still

### III

Debab's application for asylum arises against the backdrop of the ongoing violent conflict in Algeria between the government and its armed Islamic fundamentalist opponents. In *Meguenine v. INS*, 139 F.3d 25 (1st Cir.1998), we described the situation in Algeria:

> In 1989, Algeria opened its political process to parties other than its ruling secular party. An Islamic fundamentalist party, the Islamic Salvation Front, soon became the most important opposition party. In December 1991, the government held elections in two stages. After the Islamic Salvation Front won the first stage, the military cancelled the second stage. The civilian president resigned and a military junta took power. Radical Islamic fundamentalists, who had recently formed the Armed Islamic Group, launched terrorist attacks to destabilize the new government. The military government's forces fought back. Both sides have acted with considerable brutality toward the civilian population. So far, tens of thousands of Algerians have died in the conflict.

*Id.* at 26.

Before coming to the United States, Debab had worked for two years as an engineer for an Algerian state-owned chemical company named Asmidal. Debab testified before the IJ that on three occasions in June and July of 1994 he received threats from two or three unknown men when he did not accede to their demands that he sabotage the place where he worked. The men told Debab to close a gauge at the plant; doing so would apparently have caused an explosion. All of the encounters occurred in the same local cafe. At the first encounter, Debab refused to cooperate with the men. Two men—one of whom had been present at the initial encounter—returned two weeks later. Debab testified that at this second meeting, "they told me[,] why didn't you do what we told you[?] You should do what we told you and if you don't you will see what will happen to you." Debab again did not comply with the

men's request. Approximately three weeks later, three different men approached Debab in the cafe and made comments similar to those made during the first two encounters.

Debab testified that he believed the men who threatened him came from a single organization because they made similar comments and asked him to perform the same act—sabotage the plant. When asked why he believed that the men belonged to an organization, he commented, "[b]ecause there are problems in the country and automatically they are, they belong to an organization." However, Debab stated that he did not know the organization to which the men belonged, and Debab's counsel did not ask him any other questions regarding the situation in Algeria, the basis of his understanding that the men were affiliated with an organization, or, indeed, the likely identity or characteristics of the organization.

Debab added that his fears were based on "personal observation plus what happened to friends of mine." In particular, he stated, "I know somebody who, who lived in the same neighborhood who was killed by people that he did not know and he was threatened before [the killing]." Debab also testified that he was afraid to go to the police in Algeria to report the incidents, "[b]ecause it would result in a big problem," in that the police might "take me for an interview and they may think that I'm with those people."

After the third threat against him, Debab fled to the home of his uncle—who lived approximately ninety kilometers from Debab—"to hide." He returned to his place of employment once, approximately twenty days later, to request medical leave. Debab later took his annual vacation, remaining at his uncle's home, and then applied for a visa to the United States.

Debab's parents and five siblings remain in Algeria. Debab testified that, to the best of his knowledge, no family members have had difficulties since his departure.

The IJ found Debab's description of the events that occurred in Algeria to be credi-

**24**

ble. However, the IJ found that Debab's claim that these events caused him to depart Algeria was not credible. The IJ stated that "although there does appear to be a high level of terrorism and random acts of violence and as well, government sponsored or sanctioned mistreatment of individuals, there does not appear to be any support for [Debab's] claim that he himself is likely to be targeted for any kind of harm on one of the five reasons listed in the statute."

The IJ also found that the "case appears entirely pre-textual," because although she believed that Debab had told the truth regarding the three threats, she did not find Debab's "testimony to be truthful with respect that these three incidents cause[d] him to decide to depart his country and come to the United States to find safe haven." The IJ's determination was based on her finding that Debab was unable "to communicate any theory as to why these men sought him out or who they were representing or why they would have targeted his employer."

The BIA dismissed Debab's appeal but focused on different issues. It upheld the IJ's determination that Debab had shown neither past persecution nor a well-founded fear of persecution on account of one of the five categories protected by the statute. Noting that the 1995 State Department report on Algeria described a rise in both terrorist activity and crime in Algeria, the BIA stated that "[t]here is no indication that [Debab] was threatened on account of an enumerated ground, rather than due to an unknown criminal motive."

### IV

On petition for review under old INA § 106—the provision applicable in this case—we review a BIA decision that a petitioner is ineligible for asylum and withholding of deportation to determine if the "agency's conclusions [are] 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Gailius v. INS*, 147 F.3d 34, 44 (1st Cir.1998) (quoting INA § 106(a)(4)); *see also Meguenine*, 139 F.3d at 27. Although our review is deferential, the INS is not entitled to extreme deference. *See*

*Gailius,* 147 F.3d at 44. To reverse the BIA's factual findings this court must find "that the evidence not only supports that conclusion, but compels it." *INS v. Elias-Zacarias,* 502 U.S. 478, 481 n. 1, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). In addition, "[t]he court reviews the BIA's legal conclusions de novo, although it gives deference, where appropriate, to the agency's interpretation of the underlying statute in accordance with administrative law principles." *Meguenine,* 139 F.3d at 27.

In the present case, the BIA's rejection of Debab's asylum application turned on factual questions. Debab makes a two-step argument: first, that the people who threatened him had to be Islamic terrorists; and second, that from this it can be inferred that the threats were based on political beliefs. We need reach only the first step, an issue of fact. The BIA found that Debab presented insufficient evidence to support a claim of past persecution or a reasonable fear of future persecution by Islamic militants. Because of these findings, the BIA did not consider whether, given a showing of past persecution or a reasonable fear of future persecution by Islamic militants, Debab's status as a government employee would have provided sufficient nexus with one of the five protected categories.

### V

Debab contends that the BIA's finding that there was no indication that the persons who threatened him were members of Algeria's armed Islamic insurgency was not supported by substantial evidence.

Debab bore the burden of proof of demonstrating a well-founded fear of future persecution based on one of the grounds set forth in the statute. *See Civil v. INS*, 140 F.3d 52, 55 (1st Cir.1998); 8 C.F.R. § 208.13. "In order to establish a well-founded fear of future persecution, a petitioner must have shown both a genuine subjective fear and an objectively reasonable fear of persecution on a protected ground.... The objective component requires a showing 'by credible, direct, and specific evidence ... facts that would support a reasonable fear that the

petitioner faces persecution.'" *Civil*, 140 F.3d at 55 (second alteration in original) (quoting *Ravindran v. INS*, 976 F.2d 754, 758 (1st Cir.1992)).

Debab's argument is doomed by his own failure to articulate specific evidence to support his claims in his original I–589 asylum application, before the IJ, or before the BIA. On his application for asylum, Debab listed the three incidents and stated that he feared for his life. He also checked the box marked "yes" following question 21, "Have you or any member of your family, ever been mistreated/threatened by the authorities of your home country or by a group(s) controlled by the government, or by a group(s) which the government of your home country is unable or unwilling to control?" But Debab failed to check any of the boxes—race, religion, nationality, membership in a particular social group, political opinion, or other—indicating the grounds of the threats against him.[2] Debab also did not indicate that he was a government employee.

Debab's testimony before the IJ similarly lacked specificity. Debab did not state the basis for the threats against him, much less present evidence that he had been targeted based on one of the statutory grounds. The closest he came to making such a claim was in his statement that he believed that the people who threatened him all came from the "same organization" because "there are problems in [Algeria] and automatically [the people making the threats] ... belong to an organization" and in his statement that he

was afraid to go to the police in Algeria because he feared that the police "may take me for an interview and they may think that I'm with those people." Debab's prior counsel failed to pursue the source of the threats or the activities of the insurgents in the area.

Asked by his prior counsel why he feared going back to Algeria, Debab stated only that "Algeria is getting worse and worse." He based this observation "[o]n the news." He did not say that he had received any additional individual threats and he stated that his family—most of whom are government employees—had not had any problems since he fled Algeria. Debab noted one example of a neighbor "who was killed by people that he did not know" after "he was threatened," but did not state that the neighbor worked for Asmidal or any other government entity or that the threats against the neighbor had been similar to those against Debab.[3] Debab's prior counsel did not present a closing argument or argue that the "organization" which had threatened Debab was composed of Islamic terrorists or that such terrorists had repeatedly targeted government workers and facilities in Algeria. Debab introduced no documentary evidence to support his claim.[4] The only evidence he presented was his own testimony and his asylum application.

Debab's arguments to the BIA were slightly more focused. In his notice of appeal, he stated that the IJ

> failed to consider ... that the type of random violence conducted by anti-govern-

---

**2.** The transcript of proceedings before the IJ indicates that Debab altered one of his responses to Question 21 prior to the hearing before the IJ. The record is not clear as to the nature of this change. In any event, such a change would not affect our determination that Debab failed to present sufficient evidence to the IJ.

**3.** Debab stated that he knew of "[a] lot" of similar occurrences, but he only described the one mentioned above to the IJ.

**4.** The State Department report on Algeria, introduced into the record by the INS, provides some support for the argument that persons seeking to attack government-owned facilities are likely to be Islamic militants, but it can also be read for the contrary conclusion. Debab only cited the report in his brief to the BIA to support his description of the "spiraling turmoil between the government and its opponents." Debab did not

argue that the report provided evidence of government employees being targeted and did not cite to any specific portions of the report. A single general reference to the report was insufficient to *compel* the BIA to find that the threats against Debab came from Islamic militants. *Cf. Meguenine*, 139 F.3d at 29 (stating that "[t]he evidence could be read to tend to support the accuracy of [the asylum applicant's] contentions, but it is not so persuasive that we feel free to reject the BIA's conclusions when reviewing the BIA 'under a deferential substantial evidence standard'" (quoting *Cordero–Trejo v. INS*, 40 F.3d 482, 487 (1st Cir.1994))); *cf. id.* (noting that human rights reports on Algeria "lend support to the government's view that terrorist violence is indiscriminate and is not directed at any particular identifiable group of civilians other than known supporters of the government").

ment forces in Algeria, which the respondent fears, may amount to persecution on the basis of the government's apparent inability to prevent such violence and on the basis of the fact that political neutrality of the respondent may be viewed by the anti-government forces in Algeria as a form of implied political opinion favoring the government.

Debab's brief to the BIA similarly focused on his claim that he was being targeted for an imputed political opinion. Before the BIA, Debab drew a link between the activities of Islamic militants and the threats against him, stating that "[a]s far [as the militants] are concerned, any one [who] works for the government of Algeria ... must be destroyed as an act of faith." Yet he did not cite any evidence or even explicitly argue that the men who threatened him were Islamic militants.

Debab now argues that the administrative record permits only one reasonable conclusion: "that [the people who threatened him] were members of the armed Islamist insurgency which is seeking to overthrow the government of Algeria." He contends that a reasonable person would have known that persons seeking to cause an explosion at a government-owned facility were anti-government terrorists. It would certainly be reasonable to conclude that the primary beneficiaries of a plot to disrupt a government chemical plant would be terrorists. But that is not the only reasonable conclusion and the agency was not required to draw that conclusion.

■ Indeed, Debab did not even make this argument to the IJ or the BIA. There has been a waiver. "Issues not raised before the Board may not be raised for the first time upon judicial review of the Board's decisions." *Ravindran*, 976 F.2d at 760; *see also Alvarez–Flores v. INS*, 909 F.2d 1, 8 (1st Cir.1990) ("Since petitioner did not raise the claim before the BIA, however, the doctrine of exhaustion of administrative remedies precludes it here."). But even if there had not been a waiver, Debab could not prevail. We wish not to be mistaken. While Debab bore the burden of proof, it was not an impossible burden to meet. Debab was not required to

identify the men who threatened him. *See Gailius*, 147 F.3d at 45 ("We have rejected any requirement that asylum applicants identify their persecutors when their fear is of clandestine groups."). But he was required to do more than he did. Debab failed even to argue that the persons making the threats were in any way connected to clandestine anti-government organizations and so is hard pressed, particularly under a substantial evidence test, to argue that this unargued connection is a conclusion which was compelled.

As Debab argues, *Matter of Mogharrabi*, 19 I. & N. Dec. 439, 1987 WL 108943 (BIA 1987), establishes a reasonable person standard in asylum cases. *See id.* at 445 (stating that "an applicant for asylum has established a well-founded fear if he shows that a reasonable person in his circumstances would fear persecution"); *see also Gailius*, 147 F.3d at 44–45 (applying *Mogharrabi* ). *Mogharrabi* also establishes that an asylum applicant's own testimony may suffice to support an asylum claim. *See Mogharrabi*, 19 I. & N. Dec. at 445. But *Mogharrabi* instructs that such testimony must be "sufficiently detailed to provide a plausible and coherent account of the basis for [the alien's] fear." *Id.* Debab's testimony lacked sufficient detail to compel the IJ or the BIA to determine that Debab had a reasonable fear of Islamic terrorists.

Debab contends that in the proceedings before the IJ he "was never asked 'what kind of organization threatened him,' " or "why he thinks [those making the threats] targeted him." Debab protests that had such questions been asked, "the answer may have explicitly provided the nexus that the Board found lacking." But Debab had more than ample opportunity to make such arguments. In sum, there is no basis to say that the BIA's decision fails for want of substantial evidence.

## VI

■ Debab urges this court to require the BIA "to timely rule" on Debab's Motion to Reopen. "A motion to reopen proceedings shall not be granted unless it appears to the Board that evidence sought to be offered is

material and was not available and could not have been discovered or presented at the former hearing...." 8 C.F.R. § 3.2(c)(1) (1998). Debab filed a Motion to Reopen on March 13, 1998.[5] The Motion to Reopen is, to date, still pending before the BIA. Debab contends that he has introduced additional evidence along with the Motion to Reopen that provides proof of the nexus between the threats against him and the five statutory grounds. He also claims that such evidence was not available at the time of the proceedings before the IJ.

Debab does not contend that the BIA has unreasonably delayed action on his Motion to Reopen. *Cf.* 5 U.S.C. § 706(1). It would, of course, be in the interests of justice if the BIA were to act quickly, but we do not, under these circumstances, find authority to compel the agency to act. Debab also fails to cite any authority that supports his contention that we have the power to review a pending Motion to Reopen. *Cf.* 5 U.S.C. § 704.

## VII

■ The horrors of Algeria's civil war are real and not to be minimized. There is reason to be sympathetic to Debab's plight, as well as to the plight of other Algerian citizens. The limits on Congress's willingness to grant asylum are also real, and these judgments are committed to Congress. "Generally, evidence of widespread violence and human rights violations affecting all citizens is insufficient to establish persecution." *Ravindran,* 976 F.2d at 759; *see also Meguenine,* 139 F.3d at 29 ("[I]t is the law that general fears (even 'well-founded' ones) of future harm from political upheaval or terrorist violence are not sufficient to establish eligibility for asylum under § 208(a) of the INA."). There is substantial evidence to support the BIA's determination that Debab failed to prove past persecution or a well-founded fear of persecution on one of the grounds enumerated in the statute. We affirm the BIA's decision.

---

**5.** Debab also filed a Motion to Hold in Abeyance with this court on May 11, 1998, requesting that this court hold this case in abeyance pending a decision from the BIA on Debab's Motion to Reopen. This court denied the Motion to Hold in Abeyance.