USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

 ____________________

No. 98-1266

 ABIDDINE DEBAB,

 Petitioner,

 v.

 IMMIGRATION AND NATURALIZATION SERVICE,

 Respondent.

 ____________________

 PETITION FOR REVIEW OF AN ORDER OF

 THE BOARD OF IMMIGRATION APPEALS
 ____________________

 Before

 Torruella, Chief Judge,

 Bownes, Senior Circuit Judge,
 
 and Lynch, Circuit Judge.
 ____________________
 
 Maureen O'Sullivan, with whom Harvey Kaplan, Jerry Friedman,
and Kaplan, O'Sullivan & Friedman were on brief, for petitioner.

 Alison Marie Igoe, Office of Immigration Litigation, Civil
Division, United States Department of Justice, with whom
Christopher C. Fuller, Senior Litigation Counsel, Office of
Immigration Litigation, and Frank W. Hunger, Assistant Attorney
General, Civil Division, were on brief, for respondent. 
 
 ____________________
 
 December 22, 1998
 ____________________
 LYNCH, Circuit Judge. Abiddine Debab, an
 Algerian immigrant, seeks reversal of an order of the Board of
 Immigration Appeals. That order affirmed the decision of the
 Immigration Judge denying his application for political asylum
 under the Immigration and Nationality Act ("INA") 208, 8
 U.S.C. 1158, and his application for withholding of
 deportation under INA 243(h), 8 U.S.C. 1253(h) (1996),
 amended by the Illegal Immigration and Immigrant Responsibility
 Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 307(a), 110
 Stat. 3009-546. 
 The BIA concluded that the IJ had correctly determined
 that Debab failed to establish either past persecution or a
 well-founded fear of future persecution on account of any of
 the five statutorily protected grounds -- "race, religion,
 nationality, membership in a particular social group, or
 political opinion." 8 U.S.C. 1101(a)(42). Here Debab argues
 first that his evidence showed that threats he admittedly
 received came from members of the armed Islamic insurgency
 against the Algerian government. This, he says, shows
 persecution on account of political opinion and social group
 membership. Because there is substantial evidence to support
 the Board's determination against Debab on his first argument,
 we affirm.
 
 I
 Debab, an Algerian citizen, came to the United States
 from Algeria on October 19, 1994 holding a visa as a non-
 immigrant visitor for pleasure. His visa permitted him to
 remain in the United States until April 18, 1995. In December
 1994, Debab applied for asylum under INA 208(a), which gives
 the Attorney General discretion to grant asylum to "refugees"
 as defined by the INA, and for withholding of deportation under
 INA 243(h), which requires the Attorney General to withhold
 deportation to a country in which an alien would be threatened
 with persecution on account of one or more of the five
 specified grounds. Following the denial of Debab's asylum
 application, the Immigration and Naturalization Service ("INS")
 brought deportation proceedings against him. At a proceeding
 before an IJ, Debab conceded deportability and reasserted his
 application for asylum and withholding of deportation.
 In a January 9, 1997 decision, the IJ found Debab
 ineligible both for asylum and for withholding of deportation,
 and agreed to grant him voluntary departure in lieu of
 deportation. Debab appealed the IJ's decision to the BIA. On
 February 13, 1998, the BIA affirmed. Debab now appeals.
 II
 Debab's case is governed by the "transitional rules" of
 the IIRIRA. That is because the BIA's decision dismissing his
 case was issued after October 31, 1996 but proceedings were
 brought against him prior to April 1, 1997 (IIRIRA's "Title
 III-A effective date"). See IIRIRA 309(c)(1), 110 Stat. at
 3009-625, as amended by Act of Oct. 11, 1997, Pub. L. No. 104-
 302, 2, 110 Stat. 3656, 3657; cf. Goncalves v. Reno, 144 F.3d
 110, 116 (1st Cir. 1998) (discussing the transitional rules). 
 In general, under those transitional rules, aliens appealing a
 denial of a decision to grant asylum under INA 208(a) or to
 withhold deportation under INA 243(h) must file a petition
 for review within thirty days under former INA 106. SeeIIRIRA 309(c)(4), 110 Stat. at 3009-626 . As Debab filed the
 requisite petition for review within thirty days, this court
 has jurisdiction, and the parties do not contend otherwise. 
 III
 Debab's application for asylum arises against the
 backdrop of the ongoing violent conflict in Algeria between the
 government and its armed Islamic fundamentalist opponents. In
 Meguenine v. INS, 139 F.3d 25 (1st Cir. 1998), we described the
 situation in Algeria:
 In 1989, Algeria opened its political process to
 parties other than its ruling secular party. An
 Islamic fundamentalist party, the Islamic Salvation
 Front, soon became the most important opposition party. 
 In December 1991, the government held elections in two
 stages. After the Islamic Salvation Front won the
 first stage, the military cancelled the second stage. 
 The civilian president resigned and a military junta
 took power. Radical Islamic fundamentalists, who had
 recently formed the Armed Islamic Group, launched
 terrorist attacks to destabilize the new government. 
 The military government's forces fought back. Both
 sides have acted with considerable brutality toward the
 civilian population. So far, tens of thousands of
 Algerians have died in the conflict.
 
 Id. at 26.
 Before coming to the United States, Debab had worked
 for two years as an engineer for an Algerian state-owned
 chemical company named Asmidal. Debab testified before the IJ
 that on three occasions in June and July of 1994 he received
 threats from two or three unknown men when he did not accede to
 their demands that he sabotage the place where he worked. The
 men told Debab to close a gauge at the plant; doing so would
 apparently have caused an explosion. All of the encounters
 occurred in the same local cafe. At the first encounter, Debab
 refused to cooperate with the men. Two men -- one of whom had
 been present at the initial encounter -- returned two weeks
 later. Debab testified that at this second meeting, "they told
 me[,] why didn't you do what we told you[?] You should do what
 we told you and if you don't you will see what will happen to
 you." Debab again did not comply with the men's request. 
 Approximately three weeks later, three different men approached
 Debab in the cafe and made comments similar to those made
 during the first two encounters. 
 Debab testified that he believed the men who threatened
 him came from a single organization because they made similar
 comments and asked him to perform the same act -- sabotage the
 plant. When asked why he believed that the men belonged to an
 organization, he commented, "[b]ecause there are problems in
 the country and automatically they are, they belong to an
 organization." However, Debab stated that he did not know the
 organization to which the men belonged, and Debab's counsel did
 not ask him any other questions regarding the situation in
 Algeria, the basis of his understanding that the men were
 affiliated with an organization, or, indeed, the likely
 identity or characteristics of the organization. 
 Debab added that his fears were based on "personal
 observation plus what happened to friends of mine." In
 particular, he stated, "I know somebody who, who lived in the
 same neighborhood who was killed by people that he did not know
 and he was threatened before [the killing]." Debab also
 testified that he was afraid to go to the police in Algeria to
 report the incidents, "[b]ecause it would result in a big
 problem," in that the police might "take me for an interview
 and they may think that I'm with those people."
 After the third threat against him, Debab fled to the
 home of his uncle -- who lived approximately ninety kilometers
 from Debab -- "to hide." He returned to his place of
 employment once, approximately twenty days later, to request
 medical leave. Debab later took his annual vacation, remaining
 at his uncle's home, and then applied for a visa to the United
 States. 
 Debab's parents and five siblings remain in Algeria. 
 Debab testified that, to the best of his knowledge, no family
 members have had difficulties since his departure.
 The IJ found Debab's description of the events that
 occurred in Algeria to be credible. However, the IJ found that
 Debab's claim that these events caused him to depart Algeria
 was not credible. The IJ stated that "although there does
 appear to be a high level of terrorism and random acts of
 violence and as well, government sponsored or sanctioned
 mistreatment of individuals, there does not appear to be any
 support for [Debab's] claim that he himself is likely to be
 targeted for any kind of harm on one of the five reasons listed
 in the statute." 
 The IJ also found that the "case appears entirely pre-
 textual," because although she believed that Debab had told the
 truth regarding the three threats, she did not find Debab's
 "testimony to be truthful with respect that these three
 incidents cause[d] him to decide to depart his country and come
 to the United States to find safe haven." The IJ's
 determination was based on her finding that Debab was unable
 "to communicate any theory as to why these men sought him out
 or who they were representing or why they would have targeted
 his employer."
 The BIA dismissed Debab's appeal but focused on
 different issues. It upheld the IJ's determination that Debab
 had shown neither past persecution nor a well-founded fear of
 persecution on account of one of the five categories protected
 by the statute. Noting that the 1995 State Department report
 on Algeria described a rise in both terrorist activity and
 crime in Algeria, the BIA stated that "[t]here is no indication
 that [Debab] was threatened on account of an enumerated ground,
 rather than due to an unknown criminal motive."
 IV
 On petition for review under old INA 106 -- the
 provision applicable in this case -- we review a BIA decision
 that a petitioner is ineligible for asylum and withholding of
 deportation to determine if the "agency's conclusions [are]
 'supported by reasonable, substantial, and probative evidence
 on the record considered as a whole.'" Gailius v. INS, 147
 F.3d 34, 44 (1st Cir. 1998) (quoting INA 106(a)(4)); see alsoMeguenine, 139 F.3d at 27. Although our review is deferential,
 the INS is not entitled to extreme deference. See Gailius, 147
 F.3d at 44. To reverse the BIA's factual findings this court
 must find "that the evidence not only supports that conclusion,
 but compels it." INS v. Elias-Zacarias, 502 U.S. 478, 481 n.1
 (1992). In addition, "[t]he court reviews the BIA's legal
 conclusions de novo, although it gives deference, where
 appropriate, to the agency's interpretation of the underlying
 statute in accordance with administrative law principles." 
 Meguenine, 139 F.3d at 27. 
 In the present case, the BIA's rejection of Debab's
 asylum application turned on factual questions. Debab makes a
 two-step argument: first, that the people who threatened him
 had to be Islamic terrorists; and second, that from this it can
 be inferred that the threats were based on political beliefs. 
 We need reach only the first step, an issue of fact. The BIA
 found that Debab presented insufficient evidence to support a
 claim of past persecution or a reasonable fear of future
 persecution by Islamic militants. Because of these findings,
 the BIA did not consider whether, given a showing of past
 persecution or a reasonable fear of future persecution by
 Islamic militants, Debab's status as a government employee
 would have provided sufficient nexus with one of the five
 protected categories.
 
 V
 Debab contends that the BIA's finding that there was no
 indication that the persons who threatened him were members of
 Algeria's armed Islamic insurgency was not supported by
 substantial evidence.
 Debab bore the burden of proof of demonstrating a well-
 founded fear of future persecution based on one of the grounds
 set forth in the statute. See Civil v. INS, 140 F.3d 52, 55
 (1st Cir. 1998); 8 C.F.R. 208.13. "In order to establish a
 well-founded fear of future persecution, a petitioner must have
 shown both a genuine subjective fear and an objectively
 reasonable fear of persecution on a protected ground. . . . 
 The objective component requires a showing 'by credible,
 direct, and specific evidence . . . facts that would support a
 reasonable fear that the petitioner faces persecution.'" 
 Civil, 140 F.3d at 55 (second alteration in original) (quoting
 Ravindran v. INS, 976 F.2d 754, 758 (1st Cir. 1992)). 
 Debab's argument is doomed by his own failure to
 articulate specific evidence to support his claims in his
 original I-589 asylum application, before the IJ, or before the
 BIA. On his application for asylum, Debab listed the three
 incidents and stated that he feared for his life. He also
 checked the box marked "yes" following question 21, "Have you
 or any member of your family, ever been mistreated/threatened
 by the authorities of your home country or by a group(s)
 controlled by the government, or by a group(s) which the
 government of your home country is unable or unwilling to
 control?" But Debab failed to check any of the boxes -- race,
 religion, nationality, membership in a particular social group,
 political opinion, or other -- indicating the grounds of the
 threats against him. Debab also did not indicate that he was
 a government employee.
 Debab's testimony before the IJ similarly lacked
 specificity. Debab did not state the basis for the threats
 against him, much less present evidence that he had been
 targeted based on one of the statutory grounds. The closest he
 came to making such a claim was in his statement that he
 believed that the people who threatened him all came from the
 "same organization" because "there are problems in [Algeria]
 and automatically [the people making the threats] . . . belong
 to an organization" and in his statement that he was afraid to
 go to the police in Algeria because he feared that the police
 "may take me for an interview and they may think that I'm with
 those people." Debab's counsel failed to pursue the source of
 the threats or the activities of the insurgents in the area. 
 Asked by his counsel why he feared going back to
 Algeria, Debab stated only that "Algeria is getting worse and
 worse." He based this observation "[o]n the news." He did not
 say that he had received any additional individual threats and
 he stated that his family -- most of whom are government
 employees -- had not had any problems since he fled Algeria. 
 Debab noted one example of a neighbor "who was killed by people
 that he did not know" after "he was threatened," but did not
 state that the neighbor worked for Asmidal or any other
 government entity or that the threats against the neighbor had
 been similar to those against Debab. Debab's counsel did not
 present a closing argument or argue that the "organization"
 which had threatened Debab was composed of Islamic terrorists
 or that such terrorists had repeatedly targeted government
 workers and facilities in Algeria. Debab introduced no
 documentary evidence to support his claim. The only evidence
 he presented was his own testimony and his asylum application.
 Debab's arguments to the BIA were slightly more
 focused. In his notice of appeal, he stated that the IJ 
 failed to consider . . . that the type of random
 violence conducted by anti-government forces in
 Algeria, which the respondent fears, may amount to
 persecution on the basis of the government's apparent
 inability to prevent such violence and on the basis of
 the fact that political neutrality of the respondent
 may be viewed by the anti-government forces in Algeria
 as a form of implied political opinion favoring the
 government.
 
 Debab's brief to the BIA similarly focused on his claim that he
 was being targeted for an imputed political opinion. Before
 the BIA, Debab drew a link between the activities of Islamic
 militants and the threats against him, stating that "[a]s far
 [as the militants] are concerned, any one [who] works for the
 government of Algeria . . . must be destroyed as an act of
 faith." Yet he did not cite any evidence or even explicitly
 argue that the men who threatened him were Islamic militants. 
 Debab now argues that the administrative record permits
 only one reasonable conclusion: "that [the people who
 threatened him] were members of the armed Islamist insurgency
 which is seeking to overthrow the government of Algeria." He
 contends that a reasonable person would have known that persons
 seeking to cause an explosion at a government-owned facility
 were anti-government terrorists. It would certainly be
 reasonable to conclude that the primary beneficiaries of a plot
 to disrupt a government chemical plant would be terrorists. 
 But that is not the only reasonable conclusion and the agency
 was not required to draw that conclusion.
 Indeed, Debab did not even make this argument to the IJ
 or the BIA. There has been a waiver. "Issues not raised
 before the Board may not be raised for the first time upon
 judicial review of the Board's decisions." Ravindran, 976 F.2d
 at 760; see also Alvarez-Flores v. INS, 909 F.2d 1, 8 (1st Cir.
 1990) ("Since petitioner did not raise the claim before the
 BIA, however, the doctrine of exhaustion of administrative
 remedies precludes it here."). But even if there had not been
 a waiver, Debab could not prevail. We wish not to be mistaken. 
 While Debab bore the burden of proof, it was not an impossible
 burden to meet. Debab was not required to identify the men who
 threatened him. See Gailius, 147 F.3d at 45 ("We have rejected
 any requirement that asylum applicants identify their
 persecutors when their fear is of clandestine groups."). But
 he was required to do more than he did. Debab failed even to
 argue that the persons making the threats were in any way
 connected to clandestine anti-government organizations and so
 is hard pressed, particularly under a substantial evidence
 test, to argue that this unargued connection is a conclusion
 which was compelled.
 As Debab argues, Matter of Mogharrabi, 19 I. & N. Dec.
 439 (BIA 1987), establishes a reasonable person standard in
 asylum cases. See id. at 445 (stating that "an applicant for
 asylum has established a well-founded fear if he shows that a
 reasonable person in his circumstances would fear
 persecution"); see also Gailius, 147 F.3d at 44-45 (applying
 Mogharrabi). Mogharrabi also establishes that an asylum
 applicant's own testimony may suffice to support an asylum
 claim. See Mogharrabi, 19 I. & N. Dec. at 445. But Mogharrabiinstructs that such testimony must be "sufficiently detailed to
 provide a plausible and coherent account of the basis for [the
 alien's] fear." Id. Debab's testimony lacked sufficient
 detail to compel the IJ or the BIA to determine that Debab had
 a reasonable fear of Islamic terrorists. 
 Debab contends that in the proceedings before the IJ he
 "was never asked 'what kind of organization threatened him,'"
 or "why he thinks [those making the threats] targeted him." 
 Debab protests that had such questions been asked, "the answer
 may have explicitly provided the nexus that the Board found
 lacking." But Debab had more than ample opportunity to make
 such arguments. In sum, there is no basis to say that the
 BIA's decision fails for want of substantial evidence.
 VI
 Debab urges this court to require the BIA "to timely
 rule" on Debab's Motion to Reopen. "A motion to reopen
 proceedings shall not be granted unless it appears to the Board
 that evidence sought to be offered is material and was not
 available and could not have been discovered or presented at
 the former hearing . . . ." 8 C.F.R. 3.2(c)(1) (1998). 
 Debab filed a Motion to Reopen on March 13, 1998. The Motion
 to Reopen is, to date, still pending before the BIA. Debab
 contends that he has introduced additional evidence along with
 the Motion to Reopen that provides proof of the nexus between
 the threats against him and the five statutory grounds. He
 also claims that such evidence was not available at the time of
 the proceedings before the IJ.
 Debab does not contend that the BIA has unreasonably
 delayed action on his Motion to Reopen. Cf. 5 U.S.C. 706(1). 
 It would, of course, be in the interests of justice if the BIA
 were to act quickly, but we do not, under these circumstances,
 find authority to compel the agency to act. Debab also fails
 to cite any authority that supports his contention that we have
 the power to review a pending Motion to Reopen. Cf. 5 U.S.C.
 704.
 VII
 The horrors of Algeria's civil war are real and not to
 be minimized. There is reason to be sympathetic to Debab's
 plight, as well as to the plight of other Algerian citizens. 
 The limits on Congress's willingness to grant asylum are also
 real, and these judgments are committed to Congress. 
 "Generally, evidence of widespread violence and human rights
 violations affecting all citizens is insufficient to establish
 persecution." Ravindran, 976 F.2d at 759; see also Meguenine,
 138 F.3d at 29 ("[I]t is the law that general fears (even 
 'well-founded' ones) of future harm from political upheaval or
 terrorist violence are not sufficient to establish eligibility
 for asylum under 208(a) of the INA."). There is substantial
 evidence to support the BIA's determination that Debab failed
 to prove past persecution or a well-founded fear of persecution
 on one of the grounds enumerated in the statute. We affirm the
 BIA's decision.