**Not for Publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

No. 02-2328

NERY OLIVEIRIO NAJERA MÉNDEZ and
ELDA SUSANA JIMÉNEZ MÉNDEZ NAJERA,

Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE,

Respondent.

ON PETITION FOR REVIEW OF AN ORDER OF

THE BOARD OF IMMIGRATION APPEALS

Before

Boudin, <u>Chief Judge</u>,

Torruella and Selya, <u>Circuit Judges</u>.

<u>Seth Adam Perlmutter</u> on brief for petitioners.
<u>Peter D. Keisler</u>, Assistant Attorney General, Civil Division,
<u>Ernesto H. Molina, Jr.</u>, Senior Litigation Counsel, and <u>Jennifer
Paisner</u>, Office of Immigration Litigation, U.S. Department of
Justice, Civil Division, on brief for respondent.

March 16, 2004

**Per Curiam**.  Nery Oliveirio Najera Mendez ("Najera") and Elda Susana Jimenez Mendez Najera ("Jimenez") are citizens of Guatemala, who entered the United States at the Mexican border without being admitted or paroled on April 3, 1993, and August 27, 1992, respectively.  The two were married in the United States on April 14, 1998, and have one child born in the United States.  On October 15, 1998, the INS issued each of them a Notice to Appear which charged Najera and Jimenez with removability under 8 U.S.C. § 1182(a)(6)(A)(i) (2000) as aliens present in the United States without being admitted or paroled.

Najera and Jimenez conceded removability as charged, and requested asylum and withholding of removal.  An Immigration Judge held a hearing on the asylum applications on November 16, 1999, during which both Najera and Jimenez testified.  At the conclusion of the hearing, the Immigration Judge denied the petitioners' applications for asylum because they had not been timely filed and there were no excusing exceptional circumstances.  8 U.S.C. § 1158(a)(2) (2000).  No appeal was taken from this aspect of the ruling.

The Immigration Judge also denied petitioners' applications for withholding of removal, finding that they had failed to demonstrate past persecution or a probability of future persecution on account of a protected ground.  Petitioners appealed this part of the Immigration Judge's decision to the Board of

-2-

Immigration Appeals, which affirmed without opinion the decision of the Immigration Judge. 8 C.F.R. 1003.1(a)(7) (2003). Petitioners now seek review in this court, and under the new procedures this means that we review directly the decision of the Immigration Judge. Herbert v. Ashcroft, 325 F.3d 68, 71 (1st Cir. 2003); Albathani v. INS, 318 F.3d 365, 373 (1st Cir. 2003).

"The burden of proof is on the applicant for withholding of removal . . . to establish that his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.16(b) (2003). An alien can establish withholding of removal in one of two ways. First, the alien may demonstrate past persecution on one of the protected grounds, which creates a rebuttable presumption that the alien's life or freedom would be threatened in the future. Id. § 208.16(b)(1) (2003). Second, the alien may show that his or her life or freedom would be threatened in the future by demonstrating that it is more likely than not that he or she would be persecuted on account of a protected ground. Id. § 208.16(b)(2) (2003).

The Immigration Judge found that petitioners had not produced evidence sufficient to establish withholding of removal under either method. That determination "must be upheld if supported by reasonable, substantial, and probative evidence on the record considered as a whole." El Moraghy v. Ashcroft, 331 F.3d

195, 202 (1st Cir. 2003) (quoting INS v. Elias-Zacarias, 502 U.S. 478, 481 (1992) (internal quotation omitted)). We deny the petitions for review because the evidence fails to establish past persecution or a threat of future persecution on account of one of the five enumerated grounds.

The evidence produced in support of petitioners' claim is briefly as follows: Najera was born in the village of Santo Domingo in Guatemala, and moved with his family to the village of Peten. Jimenez also lived in the village of Peten, although she did not know Najera before coming to America. In January 1984, when petitioners were ten or eleven years old, the village was attacked by guerrillas. Najera's parents disappeared in the attack. Jimenez's parents were wounded in the attack, but survived and continue to reside in Guatemala; her aunt, uncle, and cousin disappeared in the attack.

Najera testified that his parents were not involved politically, had no contact with the guerillas, and that although they were Catholic his family was not persecuted on account of their religion. Jimenez also testified that her family was not part of any political or religious group that would have made them subject to this kind of attack. Jimenez speculated that the 1984 attack by the guerrillas on Peten was caused by the false accusation either that the villagers or her family specifically--

her testimony is ambiguous on this point--were acting as informants to the military against the guerillas.

Nothing in the evidence suggests past persecution on one of the five protected grounds. The only other evidence as to past persecution involved a 1986 guerilla attack on Najera's neighbor's home in Santa Domingo. Najera fled to Santa Domingo after leaving Peten but before leaving Guatemala altogether. The attack, which focused on Najera's neighbor and not him, does not suggest past persecution on account of one of the protected grounds.

Petitioners fare no better in seeking to prove future persecution on account of one of the five protected grounds. Najera testified that he has not had any contact with friends or relatives in Guatemala since he left the country in 1986, and had no knowledge of the current conditions there. Najera is not a member of any organizations or groups in Guatemala, nor has he ever been arrested, detained or interrogated in any country. He stated that notwithstanding peace accords agreed on in 1996 in Guatemala, he was still afraid to return because of what he experienced in 1984. When pressed as to whether he thought anyone in Guatemala was looking for him specifically, he merely stated "there's always people to harm you and I'm very frightened to be killed."

Jimenez, who left Guatemala in 1987 at the request of her parents, still keeps in touch with her parents and siblings who reside in Guatemala. She stated that although no member of her

family has recently been attacked in Guatemala, she is afraid to return there because "it is known that these people are always killing there." Jimenez is not a member of any organizations or groups in Guatemala, nor has she ever been arrested, detained or interrogated in any country.

While petitioners have produced evidence that guerilla attacks continue in Guatemala, and may even be able to demonstrate that they too could fall victim to guerilla attacks, they have produced no evidence to suggest that any persecution they may suffer will be on account of one of the five enumerated protected grounds. Petitioners concede as much in their brief:

> Eventhough [sic] the retribution which the Petitioners believes [sic] they will suffer if they are returned to Guatemala, does not appear to be on account of race, religion, nationality, membership in a particular social group or political opinion, the fact the Guatemalan government has been so ineffective in preventing, policing and prosecuting cases of retribution and other violent crime, demonstrates an acquiescence and acceptance by the government of these activities which place people in the Petitioners' position in great danger.

"[I]t is the law that general fears (even 'well-founded' ones) of future harm from political upheaval or terrorist violence are not sufficient to establish eligibility for asylum," Mequenine v. INS, 139 F.3d 25, 29 (1st Cir. 1998), much less withholding of removal, Albathani, 318 F.3d at 372-73 (withholding standard

-6-

stricter than asylum standard), as the Immigration Judge recognized.

The petition for review is <u>denied</u>.